**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE: SMITH & NEPHEW BIRMINGHAM HIP RESURFACING (BHR) HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL No. 2775<br>Master Docket No. 1:17-md-2775<br><br>JUDGE CATHERINE C. BLAKE<br><br>**THIS DOCUMENT RELATES TO ALL BHR TRACK CASES** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO SMITH & NEPHEW'S**
**MOTION TO DISMISS CERTAIN TIME-BARRED CLAIMS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STANDARD OF REVIEW ........................................................................................... 3

FACTUAL BACKGROUND ......................................................................................... 4

DISCUSSION ................................................................................................................ 5

    I.      S&N's Motion and Exhibits Include Factual And Legal Inaccuracies ................... 5

    II.     Smith & Nephew Has Not Shown That Every Plaintiff's Revision Date Is The Trigger For The Statute of Limitations As A Matter of Law ................................ 7

    III.    Smith & Nephew's Conduct Supports Tolling Statute of Limitations ................. 10

    IV.    Smith & Nephew Fails To Meet Its Rule 12(b)(6) Burden .................................. 11

        A.     Alabama ........................................................................................... 11

        B.     California .......................................................................................... 12

        C.     Idaho ................................................................................................ 13

        D.     Michigan .......................................................................................... 14

        E.     Louisiana ......................................................................................... 15

        F.     New York ......................................................................................... 16

        G.     Tennessee ......................................................................................... 17

        H.     Remaining Discovery Rule States ..................................................... 18

    V.     Plaintiffs' Breach of Warranty Claims Are Timely ............................................ 19

CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. American Medical Systems, Inc.*, 705 Fed. Appx. 744, 746 (10th Cir. Aug. 25, 2017).. 8

*Allen v. A.H. Robins Co.*, 752 F.2d 1365, 1371-72 (9th Cir. 1985)................................. 10, 13, 14

*Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.*, 396 Mass. 818, 825-26, 489 N.E.2d 172 (1986) ........................................................................................................ 19

*Asbestos v. Bordelon, Inc.* 726 So. 2d 926, 975 (La. App. 4 Cir. October 21, 1998)............ 15, 16

*Bekins v. AstraZeneca Pharm. LP & AstraZeneca LP*, No. 17-55461, 2018 U.S. App. LEXIS 17797, at *1 (9th Cir. June 28, 2018) ............................................................... passim

*Beth Israel v. Bartley, Inc.*, 579 So. 2d 1066, 1072 (La. App. 4th Apr. 18, 1991).................. 8, 15

*Biomet M2a Magnum Hip Implant Prods. Liab. Litig. (MDL 2391)*, Doc. 3553 (N.D. Ind. March 28, 2018) ...................................................................................................................... 3

*Blanco v. AT&T*, 90 N.Y.2d 757, 767 (1997) ............................................................................. 17

*Brady v. Zimmer, Inc.*, Civil Action No. 10-3043, 2015 U.S. Dist. LEXIS 58553 (D.N.J. May 4, 2015) ....................................................................................................................................... 3

*Bridgestone/Firestone, Inc.*, 200 F. Supp. 2d 983, 989-90 (S.D. Ind. 2002 ................................ 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 3

*Chantix (Varenicline) Prods. Liab. Litig.*, 881 F. Supp. 2d 1333, 1343 (N.D. Ala. 2012) ........... 9

*Cornett v. AVCO Fin. Servs.*, 792 F.2d 447, 450 (4th Cir. 1986).................................................. 10

*Creamer v. Motors*, No. 16-4045-SAC, 2016 WL 3197379, at *2 (D. Kan. May 18, 2016)......... 9

Crews v. Smith & Nephew, Inc., 16-cv-471, Eastern District of Kentucky, DE#1 (Notice of Removal filed December 22, 2016) ............................................................................................ 5

*Douglass v. NIT-TSS, Inc.*, 632 F. Supp. 2d 486, 491 (D. Md. 2009) ................................. 2, 3, 10

*Erbe v. Lincoln Rochester Trust Co.*, 12 A.D.2d 211 (App Div. 1961) ....................................... 17

*Fehl v. Horst*, 256 Ore. 518, 524 (Ore. Sup. Ct. 1970)................................................................ 19

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803, 27 Cal. Rptr. 3d 661, 664, 110 P.3d 914, 917 (2005)................................................................................................... 7, 8, 13

*Frank v. Linkner*, 500 Mich. 133, 148 (2017) ............................................................................ 14

*Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 111 F. Supp. 3d 79, 86 (D. Mass. 2015) ........................................................................................................................................... 9

*Gaillard v. Bayer Corp.*, 986 F. Supp. 2d 241 (E.D.N.Y. 2013) ................................................. 17

*Giordano v. Market America, Inc.* 15 N.Y.3d 590, 598 (N.Y. 2010) .......................................... 16

*Glus v. Brooklyn*, 359 U.S. 231, 232-33 (1959) ........................................................................... 1

*Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ...................................................... 3

*Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637-638, 2007 Cal. LEXIS 1494, *24-25 (Cal. Sup. Ct. 2007) ................................................................................................................... 19

*Hennigan v. General Electric Co.*, Case No. 09-11912, 2010 U.S. Dist. LEXIS 103090, *13-19 (E.D. Mich. Sept. 29, 2010) ....................................................................................................... 19

*Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) ......................................................... 3

*Jamil Abdu-Alim Amin v. Universal Life Ins. Co* ....................................................................... 15

*Jeffries v. Boston Scientific Corp.*, No. RWT 15-cv-3480, 2017 WL 2645723, at *2 (D. Md. June 20, 2017) ................................................................................................................................. 2, 9

*Lane v. Wal-Mart Stores E, Inc.*, 69 F.Supp.2d 749, 754 (D. Md. Sept. 1, 1999) ....................... 10

*Lee v. Wolfson*, 265 F. Supp. 2d 14, 19 (D.D.C. 2003) .............................................................. 10

*Misener v. Gen. Motors Corp.*, 924 F. Supp. 130, 132, n. 1 (D. Utah 1996) .............................. 10

*Moon v. Harco Drugs, Inc.*, 435 So.2d 218, 220 (Ala. 1983) ..................................................... 12

*Nicolosi v. Smith & Nephew, Inc.*, No. L01256-13, 2017 WL 632274, at *3 (N.J. Super. Ct. App. Div. Feb. 16, 2017) .................................................................................................................. 2, 9

*Payton v. Monsanto Co.*, 801 So.2d 829, 835 (Ala. 2001) ......................................................... 12

*Pitre v. Yamaha Motor Co.*, 51 F.Supp. 3d 644, 666 (E.D. La. Sept. 30, 2014) ........................ 15

*Rajvongs v. Wright*, 432 S.W.3d 808, 811 (Tenn. 2013) .............................................................. 6

*S.J.D. v. Mentor Corp.*, 159 Wis. 2d 261, 267 (Wis. App. Oct. 8, 1990) ..................................... 8

*Slater v. Biomet, Inc.*, 244 F.Supp. 3d 803, 809 (N.D. Ind. March 26, 2017) .............................. 8

*Steyer*, 70 N.Y.2d 990, (Ct of Appeals 1988) ............................................................................ 17

*Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 WL 2491965, at *4 (S.D. Ohio June 17, 2008) ............................................................................................................. 9

*Strickland v. Gen. Motors Corp.*, 852 F. Supp. 956, 960 (D. Utah 1994) ............................. 10, 19

*Theriault v. A.H. Robins Co.*, 108 Idaho 303 (1985) .................................................................. 13

*Tice v. Zimmer Holdings, Inc.*, 2015 WL 4392985 *8 (W.D. Mich. July 15, 2015) ..................... 8

*Turner v. City of County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) ...................... 12

*Walker-Pittman v. Maryland Dep't of Transp.*, No. CIV. CCB-14-202, 2015 WL 419806, at *6 (D. Md. Jan. 29, 2015), *aff'd.*, 671 F. App'x 873 (4th Cir. 2016) ............................................... 3

*Williams v. Smith & Nephew* ........................................................................................................ 2

*Zimmer Durom Hip Cup Prods. Liab. Litig.*, Civil Action No. 09-4414, 2015 U.S. Dist. LEXIS 117870 (D.N.J. Sep. 1, 2015) ...................................................................................................... 3

## Statutes

Idaho Code § 5-219(4) (1979) ...................................................................................................... 13

MCLS § 600.5855 .......................................................................................................................... 14

N.Y. C.P.L.R. § 214-c(4) ....................................................................................................... 16, 17

Tenn. Code Ann. § 28-1-105 .......................................................................................................... 6

Plaintiffs submit the following Response in Opposition to Defendant Smith & Nephew, Inc.'s Motion to Dismiss Certain Time-Barred Claims ("Smith & Nephew's Motion").

## INTRODUCTION

Smith & Nephew's Motion fails for four independent reasons.

*First*, Smith & Nephew has misstated the factual record for several cases that were actually filed timely even under Smith & Nephew's arguments. In addition, its primary California case was reversed by the Ninth Circuit one week after Smith & Nephew's Motion filing in a decision that specifically moots its argument and instead supports Plaintiffs.

*Second*, Smith & Nephew fraudulently concealed from Plaintiffs and their surgeons the factual and legal basis for claims against it. *See* Master Amended Consolidated Complaint ("MACC") at ¶¶ 265-271. The allegations in the MACC are sufficient for the Court to apply the doctrine of equitable estoppel and deny Smith & Nephew's Motion in its entirety. *See*, *e.g.*, *Glus v. Brooklyn*, 359 U.S. 231, 232-33 (1959) ("To decide this case we need look no further than the maxim that no man may take advantage of his own wrong."); *see also Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) ("The doctrine of equitable estoppel arises from the equitable maxim that no person may take advantage of his or her own wrong."). Plaintiffs also attach a shocking letter from Smith & Nephew's legal department to Plaintiff Eleanor Cannan, as well as emails between Ms. Cannan and Smith & Nephew. *See* Exhibit A ("The Letter") and Exhibit B (emails)[1]. In The Letter, Smith & Nephew rejects Ms. Cannan's BHR claim and states that Smith & Nephew is "protected from civil lawsuits" related to the BHR by the United States Supreme Court and that "Smith & Nephew does not accept that the

---

[1] The allegations in the MACC are sufficient to defeat Smith & Nephew's Motion. These exhibits are attached both to show concrete examples of Plaintiffs' allegations in the MACC, and as an example of the type of information that will result from discovery.

BHR system is defective. Furthermore, it continues to meet an important patient need." *Id.* What makes these assertions so shocking is that Smith & Nephew sent The Letter on ***December 3, 2015*** - months after both the September 10, 2015, recall ("Recall") of Ms. Cannan's BHR and this Court's August 2015 ruling in *Williams v. Smith & Nephew*. This is a hornbook example of fraudulent concealment. *See, e.g., Douglass v. NIT-TSS, Inc.*, 632 F. Supp. 2d 486, 491 (D. Md. 2009) ("it is unfair to impart knowledge of a tort when a potential plaintiff is unable to discover the existence of a claim due to fraud or concealment on the part of the defendant.") (citations omitted).

**Third**, by filing its Motion under Rule 12(b)(6), Smith & Nephew must show, as a matter of law in every state, that each Plaintiff's claim is time-barred on the face of their Complaint. Smith & Nephew cannot, and does not, meet its burden by simply citing multiple state's laws about the discovery rule and asserting that each plaintiff's revision surgery, as a matter of law, began the statute of limitations clock. Further, Plaintiffs have alleged that the Recall announcement by the FDA should be the earliest possible accrual date (or the revision date if was later) and provided facts that support these contentions. *See, e.g.,* MACC at ¶¶ 62, 72-74, 79, 113, 255, 268, 369, 461. Smith & Nephew does not address how the Recall affects the legal injury Plaintiffs suffered under the many different laws of states where Plaintiffs reside, which is a case-specific analysis performed after individual discovery. Many courts have ruled that a recall triggers the statute, even if the physical injury occurred before the recall. *See, e.g., Jeffries v. Boston Scientific Corp.*, No. RWT 15-cv-3480, 2017 WL 2645723, at *2 (D. Md. June 20, 2017); *Nicolosi v. Smith & Nephew, Inc.*, No. L01256-13, 2017 WL 632274, at *3 (N.J. Super. Ct. App. Div. Feb. 16, 2017).

**Fourth,** Smith & Nephew's state-specific analysis falls short of its burden. Ultimately, the statute of limitations defense is a fact-intensive inquiry that turns on the nuances of multiple states'

laws and discovery from the specific plaintiff, the plaintiff's surgeon, and Smith & Nephew.  *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  Indeed, Smith & Nephew relies almost exclusively on cases decided after discovery where the Court applied a summary judgment standard.  This has also been the custom and practice in metal-on-metal hip MDLs.  *See*, *e.g*., *Brady v. Zimmer, Inc.*, Civil Action No. 10-3043, 2015 U.S. Dist. LEXIS 58553 (D.N.J. May 4, 2015); *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, Civil Action No. 09-4414, 2015 U.S. Dist. LEXIS 117870 (D.N.J. Sep. 1, 2015); *see also In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig. (MDL 2391)*, Doc. 3553 (N.D. Ind. March 29, 2018) (attached as Exhibit C).

For the foregoing reasons, this Court should deny Smith & Nephew's Motion.

## <u>STANDARD OF REVIEW</u>

This Court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff" because Smith & Nephew is asserting its statute of limitations defense on the pleadings. *Douglass v. NIT-TSS, Inc.*, 632 F. Supp. 2d at 491 (citations omitted). This is an affirmative defense and "the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007).  A Rule 12(b)(6) motion tests the sufficiency of the complaint "and generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Id.*  However, in the rare circumstances where plaintiffs allege in their complaint facts sufficient to rule on an affirmative defense, the defense may be reached by a motion to dismiss under Rule 12(b)(6).  "This is only appropriate if all facts necessary to the affirmative defense "clearly appear [] *on the face of complaint*." *Walker-Pittman v. Maryland Dep't of Transp.,* No. CIV. CCB-14-202, 2015 WL 419806, at *6 (D. Md. Jan. 29, 2015), *aff'd.*, 671 F. App'x 873 (4th Cir. 2016) (internal quotations and citations omitted) (emphasis in original).

## FACTUAL BACKGROUND

The FDA announced that Smith & Nephew had recalled the BHR for women, patients with small joint sizes, and men over 65 on September 10, 2015, due to dangerously high failure rates. *See* MACC at ¶11.  On the face of the MACC, Plaintiffs have sufficiently alleged that the Recall announcement by the FDA should be the earliest possible accrual date (or, if the revision occurred later, the revision), and facts that support Plaintiffs' contentions.  *See, e.g.,* MACC at ¶¶ 62, 72-74, 79, 113, 255, 268, 369, 461.   The Letter supports Plaintiffs' allegations and show that even after the Recall Smith & Nephew continued to misrepresent the facts, which calls into question when plaintiffs and their surgeons actually learned of the true facts of the Recall. Smith & Nephew also continued to claim that its product was different than other metal-on-metal devices: "We are aware that certain other manufacturers have acknowledged defects in their metal hip implants, which did not have formal FDA premarket approval. That is not the case with the BHR system. Smith & Nephew does not accept that the BHR system is defective."  *Id.*

Smith & Nephew further provided legal advice to unrepresented plaintiffs and, in doing so, misrepresented the nature of preemption law.  *See* MACC at ¶¶ 265-271; Exhibit A.  Smith & Nephew told plaintiffs - as The Letter demonstrates - that the "United States Supreme Court has held that claims regarding medical devices approved by FDA through this pre-market approval process are preempted, which means the products are protected from civil lawsuits."  *Id.*; Exhibit A.  Ms. Cannan's experience shows that even if plaintiffs acted diligently and reasonably, they could still be thwarted by Smith & Nephew's actions.  Plaintiffs submit that discovery will likely demonstrate how other plaintiffs' experiences were similar to Ms. Cannan's, as Plaintiffs have alleged, because Smith & Nephew repeatedly made false statements that misled Plaintiffs and their surgeons about the BHR's safety and relative safety, as well as misleadingly distinguishing the

BHR from other metal-on-metal hips.  *See, e.g.,* MACC at, e.g., ¶¶ 23, 62, 72-74, 79, 102,103,

113, 255, 265-71, 369, 461.  These facts are critical to the statute of limitations analysis because it

is more likely that Plaintiffs' surgeons would recite what Smith & Nephew told them: that their

revision is *not* due any defects in the product because the BHR is somehow different than all other

metal-on-metal hips and has not been recalled, helping conceal Plaintiffs' claims.  Plaintiffs have

specifically and plausibly alleged that Smith & Nephew's misrepresentations about both the safety

of the BHR and the existence of the preemption defense fraudulently concealed Plaintiffs' claims,

and that the Recall is the earliest possible date for the discovery rule analysis to begin.

## DISCUSSION

### I.      S&N's Motion and Exhibits Include Factual And Legal Inaccuracies

Smith & Nephew is simply wrong about certain Plaintiffs' facts.

For example, Smith & Nephew asserts that Sarah Crews, the only Kentucky plaintiff, filed

her claim on Aug. 22, 2017. *See* Defendant's Exhibit A at 4. However, this is the date she filed her

Short Form Complaint.  Her Complaint was actually filed in Kentucky on Nov. 21, 2016, within

one year of her revision surgery, and transferred to this MDL as part of the Initial Transfer Order

on April 5, 2017.  *See* Initial Transfer Order, MDL No. 2775 DE#81, Schedule A; *see also* Crews

v. Smith & Nephew, Inc., 16-cv-471, Eastern District of Kentucky, DE#1 (Notice of Removal filed

December 22, 2016).

In addition, James Stidham - the only Virginia plaintiff - is listed as a BHR Track case, but

in fact is a THA Track case.  *See* Active THA Track Cases in MDL 2775 as of May 7, 2018 (Dkt.

No. 682-2) and July 22, 2018 (Dkt. No. 846-2) (Smith & Nephew's filing listing Mr. Stidham's

matter as a THA case). Therefore, Plaintiffs do not address arguments under Kentucky or Virginia

law.

Likewise, Smith & Nephew's filing dates for Thomas Hopkins and Janice Berg are incorrect, as both plaintiffs previously filed lawsuits in Tennessee. Smith & Nephew ignores Tennessee law, which preserves both Hopkins's and Berg's claims through application of the state's savings statute, which allows parties to refile within one year of nonsuit. Tenn. Code Ann. § 28-1-105. *See Rajvongs v. Wright*, 432 S.W.3d 808, 811 (Tenn. 2013) ("The saving statute provides that if a timely filed action is dismissed without prejudice, a plaintiff may 'commence a new action within one (1) year after' the dismissal."). Hopkins and Berg filed their initial Complaints in Shelby County, Tenn., within one year of their revision surgeries, voluntarily nonsuited their actions, and, relying on the savings statute, refiled within one year[2]. Thus, both cases were revived, and both are timely. Finally, Smith & Nephew ignores the previously filed complaint of Plaintiff Kathryn Stranger-McGorrin in the Superior Court of California on July 29, 2016, well within the applicable statute of limitations under California law and more than a year before Smith & Nephew's reference to her complaint being filed in this MDL.

Smith & Nephew's motion relies primarily on one California case in support of its contention that California Plaintiffs' claims accrued at the time of the revision surgery, regardless of the existence of the discovery rule in California. *See* Smith & Nephew's Motion at pg. 6, 7, n. 8. However, *Bekins* was reversed by the Ninth Circuit shortly after filing of the Motion presently before this Court. *Bekins v. AstraZeneca Pharm. LP & AstraZeneca LP*, No. 17-55461, 2018 U.S.

---

[2] Thomas Hopkins filed his original Complaint in the Circuit Court of Shelby County, TN on May 29, 2014, and voluntarily dismissed the suit on March 9, 2016. *See* Hopkins v. Smith & Nephew, Inc., CT-002395-14; *see also* Order of Voluntary Non-Suit Without Prejudice filed March 9, 2016. Mr. Hopkins refiled his claim in the District of Massachusetts on March 3, 2017. *See* Hopkins v. Smith & Nephew, Inc., 1:17-cv-10360-RGS;  Janice Berg filed her original Complaint in the Circuit Court of Shelby County, TN on May 29, 2014, and voluntarily dismissed the suit on April 11, 2016. *See* Berg v. Smith & Nephew, Inc., CT-002399-14; *see also* Order of Voluntary Non-Suit Without Prejudice filed April 11, 2016. Ms. Berg refiled her claim in the Eastern District of California on February 10, 2017. *See* Berg v. Smith & Nephew, Inc., 1:17-cv-1038-CCB.

App. LEXIS 17797, at *1 (9th Cir. June 28, 2018). In *Bekins*, the plaintiff brought claims alleging

that use of Nexium caused her kidney damage. *Id.* at *1. In reversing the trial court's dismissal,

the Ninth Circuit's noted "[a]lthough it is true that Bekins knew she was suffering from kidney

failure in 2011, that fact alone is not enough…Therefore, her duty to investigate was triggered by

her viewing of the TV commercial in 2016, not by her initial diagnosis."). *Id.* at *5. Here,

Plaintiffs' claims have not legally accrued simply because a Plaintiff knows she needs a revision.

Rather, as noted in *Bekins*, California law requires some connection between the revision surgery

and the tortious conduct of the manufacturer.

## II.    Smith & Nephew Has Not Shown That Every Plaintiff's Revision Date Is The Trigger For The Statute of Limitations As A Matter of Law

At the Rule 12(b)(6) stage, Smith & Nephew must prove that each plaintiff's revision date

starts the clock on the statute of limitations, as a matter of law. However, it cannot do so: every

state defines when an injury occurs or accrues in different ways. Smith & Nephew has not applied

the nuances of these states' laws to the facts, and instead has simply asserted that a revision surgery

is the legal injury as a matter of law. While each state is different, there is a common thread running

through these states' laws: something beyond a mere physical injury is required. *See* Exhibit D

(Legal Injury State-by-State Summary). That is, for there to be a *legal* injury that triggers the

running of the statute of limitations, there must be some causal connection or nexus between the

physical injury and the defendant's actions. Many states also require actual knowledge by the

plaintiff for a claim to legally accrue.

For instance, in California, "a cause of action accrues at the time when the cause of action

is complete with all of its elements." *Bekins* 2018 U.S. App. LEXIS 17797 at *2-3, *citing Fox v.*

*Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (Cal. 2005). "Because 'the last element to occur is

generally, as a practical matter, the injury to the future plaintiff,' the statute of limitations typically

begins to run on the date of the plaintiff's injury." *Id.* at *3, *citing Fox* at 921. "However, California's 'discovery rule…delays accrual until the plaintiff has, or should have, inquiry notice of the <u>cause of action</u>." *Id.*, *citing Fox* at 920 (emphasis added). The "cause of action" is not complete until plaintiff "becomes aware of facts that would cause a reasonably prudent person to suspect [her] injuries were the result of wrongdoing." *Id.* at *4 (*citations omitted*) (alteration in *Bekins*).

Similarly, in Louisiana, the statute of limitations "does not commence to run until the plaintiff has actual or constructive knowledge of the tortious act, the damage caused, and the causal relationship between the tortious act and the damage." *Beth Israel v. Bartley, Inc.*, 579 So. 2d 1066, 1072 (La. App. 4th Apr. 18, 1991). In Wisconsin, courts have held that "a cause of action cannot be said to accrue until the claimant discovers both the nature of his or her injury <u>and its cause - or at least a relationship between the event and the injury</u>. Moreover, the relationship between the injury and its cause must be more than a layperson's hunch or belief." *S.J.D. v. Mentor Corp.*, 159 Wis. 2d 261, 267 (Wis. App. Oct. 8, 1990) (citations omitted) (emphasis added). In Utah, the statute of limitations is triggered when the plaintiff "discovered, or in the exercise of due diligence should have discovered, <u>both the harm and its</u> cause." *Adams v. American Medical Systems, Inc.*, 705 Fed. Appx. 744, 746 (10th Cir. Aug. 25, 2017) (citations omitted) (emphasis by Tenth Circuit). Finally, in hip cases, courts have held that a revision date does not automatically cause a claim to accrue. *See, e.g., Slater v. Biomet, Inc.*, 244 F.Supp. 3d 803, 809 (N.D. Ind. March 26, 2017) ("revision alone, even needing four revisions, mightn't be a strong enough clue of the wrongdoing, especially when Ms. Slater claims not have known of metallosis."); *Tice v. Zimmer Holdings, Inc.*, 2015 WL 4392985 *8 (W.D. Mich. July 15, 2015).

Here, Smith & Nephew fails to meet its burden that a revision surgery is sufficient as a matter of law.  Rather, as Plaintiffs allege, the key event is the FDA announcement of the Recall, which first put some Plaintiffs who had already had a revision on notice that Smith & Nephew's actions and failures may be causally connected to their revisions.  *See* MACC at ¶¶ 268-69. Plaintiffs also claim that Smith & Nephew's negligence included a failure to recall the BHR despite knowledge of the BHR's defects, and that failure harmed them.  *See* MACC at ¶¶ 23, 98, 102. Thus, until September 10, 2015, Smith & Nephew was still engaged in ongoing tortious conduct.

Further, courts have repeatedly held (including against Smith & Nephew) that a product recall date generally triggers the statute of limitations.  The reasoning common to these cases applies here.  That is, before a recall, Plaintiffs could not have known that the device was the legal cause of their injury, or that the manufacturer's statements about the product were false, misleading, and/or did not properly warn about the dangers of the device.  *See, e.g.*, *Jeffries v. Boston Scientific Corp.*, No. RWT 15-cv-3480, 2017 WL 2645723, at *2 (D. Md. June 20, 2017) (recall date triggered statute of limitations accrual);  *Nicolosi v. Smith & Nephew, Inc.*, No. L01256-13, 2017 WL 632274, at *3 (N.J. Super. Ct. App. Div. Feb. 16, 2017) ("The discovery rule was triggered by the May 3 and August 1, 2011 recall notices."); *Creamer v. Motors*, No. 16-4045-SAC, 2016 WL 3197379, at *2 (D. Kan. May 18, 2016) (statute of limitations in products liability action ran from date of recall, not date of accident); *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 111 F. Supp. 3d 79, 86 (D. Mass. 2015); *In re Chantix (Varenicline) Prods. Liab. Litig.*, 881 F. Supp. 2d 1333, 1343 (N.D. Ala. 2012) (label change); *Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 WL 2491965, at *4 (S.D. Ohio June 17, 2008) ("Plaintiffs have alleged in their complaint that the earliest date on which they should have known that Madison's injury and death was caused by exposure to Paxil was in September 2005, when

GSKs changed Paxil's warning label. Assuming, as the Court is required to do, that the allegations in Plaintiff's complaint are true, the cause of action accrued in September of 2005."); *Lee v. Wolfson*, 265 F. Supp. 2d 14, 19 (D.D.C. 2003) (holding that question of whether products liability cause of action accrued at time of recall was a question for the jury, despite prior injury); *In re Bridgestone/Firestone, Inc.*, 200 F. Supp. 2d 983, 989-90 (S.D. Ind. 2002; *Strickland v. Gen. Motors Corp.*, 852 F. Supp. 956, 960 (D. Utah 1994), recognized as abrogated on other grounds, *Misener v. Gen. Motors Corp.*, 924 F. Supp. 130, 132, n. 1 (D. Utah 1996).

In sum, Smith & Nephew cannot show as a matter of law that the revision date is the "injury" contrary to Plaintiffs' allegations regarding the Recall and ongoing tortious conduct.

## III.   Smith & Nephew's Conduct Supports Tolling Statute of Limitations

As this Court has held, "[e]quitable tolling may be applied 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action…'" *Lane v. Wal-Mart Stores E, Inc.*, 69 F.Supp.2d 749, 754 (D. Md. Sept. 1, 1999) (citations omitted).  This Court further noted, "the Fourth Circuit has recognized that the decision to grant such relief is within the discretion of the trial court and is depending upon the particular circumstances of the case." *Id.* (*citing Cornett v. AVCO Fin. Servs.*, 792 F.2d 447, 450 (4th Cir. 1986)).  "As a general rule, a defendant will be estopped from setting up a statute-of-limitations defense when its own prior representations or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." *Allen v. A.H. Robins Co.*, 752 F.2d 1365, 1371-72 (9th Cir. 1985).  Smith & Nephew's fraudulent concealment of Plaintiffs' claims justifies that here. *See Douglass v. NIT-TSS, Inc.,* 632 F. Supp. 2d at 491 ("it is unfair to impart knowledge of a tort when a potential plaintiff is unable to discover the existence of a claim due to fraud or concealment on the part of the defendant.") (citations omitted).

Here, Smith & Nephew's actions constitute fraudulent concealment and support application of equitable estoppel doctrine. [3]   Plaintiffs sufficiently allege in the MACC that Smith & Nephew engaged in an extensive campaign to mislead plaintiffs, the public, and the medical community about the relative safety of the BHR to other devices and Smith & Nephew's legal liability related to the BHR. *See* MACC at ¶¶ 265-271.   The Letter supports these allegations. Smith & Nephew's actions were objectively wrongful, and those wrongful actions resulted in plaintiffs (both directly and through their surgeons, as discovery will show) failing to pursue a lawsuit until they later learned the truth.   At this stage of litigation, Plaintiffs' allegations are sufficient, Smith & Nephew should not benefit from its conduct, and this Court should deny Smith & Nephew's Motion under the doctrines of equitable estoppel and fraudulent concealment.

## IV.      Smith & Nephew Fails To Meet Its Rule 12(b)(6) Burden

Plaintiffs have sufficiently pled facts that show their claims are timely, and Smith & Nephew's flawed analysis places states in categories in which they do not belong.   For instance, California actually has the discovery rule, but Smith & Nephew groups it with states that do not. *See Bekins*, 2018 U.S. App. LEXIS 17797 at *3 ("However, California's 'discovery rule…delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action.'") (citation omitted).   Similarly, as discussed in detail below, both New York and Tennessee's discovery rules operate in the same way as other states, requiring a fact-specific inquiry.   Ultimately, Smith & Nephew's application of various states' discovery rules is distinguishable, incomplete, and ignores the well-pled allegations about the Recall and its effect on the accrual of Plaintiffs' claims.

### A.  Alabama

---

[3] While the concept of equitable estoppel is intertwined with fraudulent concealment, some jurisdictions apply or analyze them separately.  *See* Exhibits E (Fraudulent Concealment) and F (Equitable Estoppel).

11

Even though Alabama does not have the discovery rule, Alabama law does not support dismissal on the pleadings. The only cases Smith & Nephew cites were decided at the summary judgment stage, following extensive discovery, and not at the pleadings stage. *See Moon v. Harco Drugs, Inc.*, 435 So.2d 218, 220 (Ala. 1983); *Payton v. Monsanto Co.*, 801 So.2d 829, 835 (Ala. 2001). This is because Alabama recognizes legal theories in addition to fraudulent concealment that toll the statute of limitations, such as the "continuous tort" doctrine. *See Moon* at 220 (citations omitted). Under the "continuous tort" doctrine, "the repeated actions of the defendants combined to create a single cause of action in tort." *Id.* at 221. Here, Plaintiffs have alleged, for example, that Smith & Nephew's failure to recall the BHR sooner harmed the Plaintiffs (MACC at, *e.g.*, ¶¶ 110, 364) and that Smith & Nephew made misrepresentations to Plaintiffs and their surgeons that, by failing to correct, left a false impression about the BHR (MACC at, *e.g.*, ¶¶ 50, 63). These continuous actions, which continued post-revision, harmed the Alabama Plaintiffs. Thus, Plaintiffs have met their burden to move forward at the pleadings stage. *See Payton* at 834.

### B.      California

California recognizes the discovery rule, and Plaintiffs have sufficiently pled facts to overcome Smith & Nephew's Motion. If not, they should be given leave to amend. *See Bekins*, 2018 U.S. App. LEXIS 17797 at *3 ("However, California's 'discovery rule…delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action.'") (citation omitted). Because Smith & Nephew has made a Rule 12(b)(6) motion, this Court must accept Plaintiffs' allegations as true. *Id.* at *5, *citing Turner v. City of County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). The plaintiff in *Bekins* knew she was suffering from kidney failure in 2011, but alleged that she was not aware, nor could she be, that it was caused by the pill she ingested until she saw a television commercial in 2016. *Id.* This allegation alone was sufficient to toll the

12

statute of limitations for purposes of a Rule 12(b)(6) motion. *Id.* The Ninth Circuit rejected an argument that she "could have learned about the link…from the publicly-available studies mentioned in her complaint, if only she had looked" because that is not the requirement in California. *Id.* Therefore, Smith & Nephew's argument here likewise fails.

Smith & Nephew's other California authority is also unavailing because the court in that case explained that a plaintiff is afforded the opportunity to conduct a reasonable investigation, and the statute of limitations is tolled if that investigation would not reveal a factual basis for the cause of action. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803, 27 Cal. Rptr. 3d 661, 664, 110 P.3d 914, 917 (2005). Here, Plaintiffs sufficiently allege just that: Smith & Nephew actively concealed the truth about the BHR from patients and engaged in a campaign to convince patients, their doctors, and even lawyers that all claims against the company were entirely preempted and that the BHR was different than other metal-on-metal hips, and that these actions prevented filing of a timely complaint. *See* MACC at ¶¶ 102, 103, 265-271. Under a Rule 12(b)(6) standard, these well-pled facts are deemed true, and Smith & Nephew cannot meet its burden.

### C.    Idaho

While Idaho does not have a discovery rule, the only case Smith & Nephew cites shows how the statute of limitations defense should be decided at the summary judgment stage. *See Theriault v. A.H. Robins Co.*, 108 Idaho 303 (1985). Interestingly, Smith & Nephew fails to mention a case that is directly on point here, which discusses both fraudulent concealment and equitable estoppel in a medical device injury case. *Allen v. A.H. Robins Co.*, 752 F.2d 1365, 1370 (9th Cir. 1985) (*citing* Idaho Code § 5-219(4) (1979)). In *Allen*, like here, a dangerous medical device harmed a woman and the manufacturer "falsely represented facts about the [product] both to the medical profession and the public and knowingly concealed various material facts about the

safety of the product." *Id.* at 1367.  Further, the medical device company "intended that the [plaintiff] rely on its conduct and that [she] did so." *Id.*  The plaintiffs in *Allen*, at the close of discovery, presented evidence supporting tolling of the statute of limitations on fraudulent concealment grounds that is similar to the evidence Plaintiffs have alleged here.  *See generally Allen* at 1367-68.  The Supreme Court of Idaho then reversed the lower court dismissal, allowing plaintiffs to move forward.  *Id.* at 1376.  Discovery is necessary to determine the reasonableness of the inquiries made by the three Idaho plaintiffs, and Smith & Nephew cannot meet its burden to dismiss these claims on the pleadings alone.

### D.   Michigan

Michigan law tolls the statute of limitations for fraudulent concealment.  *See* MCLS § 600.5855.  To invoke this statute, Michigan plaintiffs must allege, like Michigan Plaintiff Constance McLaughlin has here in the MACC, that "plaintiff did not discover and reasonably would not have discovered the cause of action and the plaintiff can 'prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery.'" *Frank v. Linkner*, 500 Mich. 133, 148 (2017) (citation omitted).  Michigan statute of limitations challenges, similar to the Rule 12(b)(6) motion here, require courts to "accept the complaint as factually accurate unless affidavits or other appropriate documents specifically contradict it." *Id.* at 140 (citations omitted).  Thus, under clear Michigan statutory law as interpreted by the Supreme Court of Michigan, Ms. McLaughlin has sufficiently alleged that Smith & Nephew fraudulently concealed her claims and should be able to move forward.[4]

---

[4] Smith & Nephew's Michigan citations do not support dismissal.  First, in *Tice v. Zimmer Holdings, Inc.*, the court refused to grant a hip manufacturer's motion to dismiss on statute of limitations grounds, stating that under Michigan law, "the complaint did not 'affirmatively show' that Plaintiffs' claims accrued more than three years before they filed the action."  2015 WL 4392985 *8 (W.D. Mich. July 15, 2015).  Here, while Ms. McLaughlin's revision surgery was more than three years before she filed her Short Form complaint, Smith & Nephew has not

### E.      Louisiana

Louisiana law does not support dismissal of Plaintiffs Claud and Sherry Aaron's claims. Under Louisiana law, the statute of limitations "does not commence to run until the plaintiff has actual or constructive knowledge of the tortious act, the damage caused, and *the causal relationship between the tortious act and the damage*. A person cannot bring suit until his cause of action has accrued and therefore prescription cannot run until that time. Mere apprehension that something might be wrong is not sufficient." *Pitre v. Yamaha Motor Co.*, 51 F.Supp. 3d 644, 666 (E.D. La. Sept. 30, 2014) *citing Beth Israel v. Bartley, Inc.*, 579 So.2d 1066, 1070-71 (La. App. 4 Cir. 1991) (emphasis added).  Further, where the statute of limitations analysis "presents questions of fact - such as 'reasonableness,' as here - that are not susceptible to resolution on the face of the pleadings, the United States Court of Appeals for the Fifth Circuit's decision in *Jamil Abdu-Alim Amin v. Universal Life Ins. Co.* [706 F.2d 638, 641 (5th Cir. 1983)] instructs that dismissal under Federal Rule of Civil Procedure 12(b)(6) is improper." *Id.* at 666.  That is exactly the situation here: the Louisiana Plaintiff's revision was in 2013 - more than two years before the Recall.  Had the Aarons sought representation or investigated their claims, Smith & Nephew's pattern of conduct would have concealed the causal relationship between the revision surgery and Smith & Nephew's tortious conduct and the availability of non-preempted claims.

Smith & Nephew also omits a quote from the one case on which it relies because that quote undercuts its argument.  While the court in *Asbestos v. Bordelon, Inc.*, did hold that "prescription begins to run when a plaintiff has actual knowledge of an injury," the very next sentence modifies this: "However, in the absence of a plaintiff's actual knowledge, prescription will begin to run

---

affirmatively shown that the revision date was the date her action accrued; rather, on the face of the MACC, she alleged her claim did not accrue until at the earliest the recall date of September 10, 2015.  MACC at ¶ 268.

when the plaintiff has constructive knowledge; that is, information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry." 726 So. 2d 926, 975 (La. App. 4 Cir. October 21, 1998).   Here, Plaintiffs have alleged that the earliest constructive knowledge was the FDA announcement of the Recall, and therefore Smith & Nephew cannot meet its burden to dismiss Louisiana Plaintiffs' claims.

### F.     New York

Smith & Nephew has not established that Plaintiffs' claims are time-barred under New York law because Smith & Nephew failed to apply or even consider New York's discovery rule, C.P.L.R. § 214-c(4), which extends the statute of limitations for certain tort victims who do not know the cause of their injuries. Nor does Smith & Nephew address whether Plaintiffs' claims could be extended beyond the three-year statute of limitations as permitted under N.Y. C.P.L.R. § 214-c(4) even though this provision applies to Plaintiffs.  *See* Smith & Nephew's Motion at 9-10. Plaintiffs specifically allege exposure to a toxic substance – metal ions – that result from the articulation of BHR's metal-on-metal components. [5]  *See* MACC at ¶¶ 15, 483, 566, 590; N.Y. C.P.L.R. § 214-c(1) (definition of "exposure" includes an implantation); *Giordano v. Market America, Inc.* 15 N.Y.3d 590, 598 (N.Y. 2010) ("The Legislature's concern when it enacted the statute was the problems raised by toxic tort cases in which the latency of a substance's effect could prevent the plaintiff from bringing a timely lawsuit. . . . [T]he whole point of CPLR 214–c was to deal with substance exposure cases.").  Exposure to metal ions results in latent injuries that take time to manifest and are ongoing.  *See e.g., id.* (effects concealed for as brief as a few hours may be "latent" within the meaning of the discovery statute).  Therefore, N.Y. C.P.L.R. § 214-c(4)

---

[5] Plaintiffs allege in the Master Amended Consolidated Complaint ("MACC"), that metal debris and metal ions entering the space around the hip implant and bloodstream eventually caused a host of injuries alleged throughout Plaintiffs' MACC. *See* MACC ¶¶ 15,566.

16

applies to Plaintiffs' claims and Smith & Nephew cannot succeed on a motion to dismiss due to time-barred claims without first applying the appropriate law on statute of limitations.

Further, under New York law, the time a plaintiff has knowledge of their injury is a mixed question of law and fact more appropriate for resolution on a motion for summary judgment. New York's discovery rule extends the three-year statute of limitations for injuries "caused by latent effects of exposure to any substance or combination of substances . . . [and] shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." N.Y. C.P.L.R. § 214-c(2);  *see also Blanco v. AT&T*, 90 N.Y.2d 757, 767 (1997) (exposure must be to a toxic substance).  The one New York case Smith & Nephew cites was decided at the summary judgment stage and not motion to dismiss. *See Gaillard v. Bayer Corp.*, 986 F. Supp. 2d 241 (E.D.N.Y. 2013).

Finally, it is well settled in New York that issues of fact regarding, equitable estoppel and fraudulent concealment, prevent a defendant from invoking the statute of limitations prior to trial. *In re Steyer*, 70 N.Y.2d 990, (Ct of Appeals 1988) citing *Erbe v. Lincoln Rochester Trust Co.*, 12 A.D.2d 211 (App Div. 1961) ("It may not be said as a matter of law that plaintiffs cannot succeed upon a trial of their cause because of the bar of the Statute of Limitations…..when plaintiffs may have been led, by false representations and concealment, to believe that there was no breach…An issue of equitable estoppel may be litigation upon trial in answer to defense of Statute of Limitations.").

### G.    Tennessee

Smith & Nephew seeks dismissal against one Tennessee plaintiff, Chad Stafford, whose revision was February 12, 2013.  In Tennessee, "a prerequisite to the running of a statute of

limitations is the plaintiffs' 'reasonable knowledge of the injury, its cause and origin.'" *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 461 (Tenn. 2012) (citations omitted). Under the discovery rule, "the pivotal issue is whether [plaintiff] would have discovered the [defendant's] allegedly wrongful acts had he exercised reasonable care and diligence. We must, at least at this [Rule 12(b)(6)] juncture, take the allegations in [plaintiff's] complaint as true and draw all reasonable inferences in [plaintiff's] favor." *Redwing* at 466. That is exactly the situation here: a factual inquiry of what Mr. Stafford did, knew, should have done or should have known is required because he has sufficiently alleged facts about the Recall.

### H.     Remaining Discovery Rule States

Smith & Nephew concedes that the remaining Plaintiffs are subject to the discovery rule, but does not perform a detailed analysis of every state's laws and apply to Plaintiffs' actions as alleged in the MACC here; rather, Smith & Nephew focuses only on the date of the revision surgery. But on the face of the MACC, Plaintiffs have sufficiently pled reasonable actions, including that the statute of limitations did not begin to run until the Recall or the revision surgery, whichever was later. MACC at ¶268. Indeed, nearly every case that Smith & Nephew cites was decided on summary judgment; in the few cases Smith & Nephew cited that courts decided on Rule 12(b)(6) motions, all but one court actually denied the motion. *See* Exhibit G.

Plaintiffs have alleged that their revision date or Recall announcement, whichever was later, was the trigger which put them on notice of the existence of a potential claim. MACC at ¶268. That is sufficient to meet their burden to move forward under every state's law. Plaintiffs should be afforded the opportunity to conduct discovery into the facts surrounding their knowledge of the claims involving the BHR device to demonstrate that their actions were reasonable and that they were diligent. Smith & Nephew's fact-specific statute of limitations defense is more

appropriate for summary judgment, and it has failed to provide the Court with any real analysis of the laws of Plaintiffs' home states.  This Court should deny Smith & Nephew's Motion.

**V.      Plaintiffs' Breach of Warranty Claims Are Timely**

Smith & Nephew also cannot meet its burden to dismiss Plaintiffs' breach of warranty claims.  Smith & Nephew concedes that several of these are properly alleged to fall within the applicable statutes of limitations.  *See* Smith & Nephew's Motion at pgs. 13-14 (acknowledging Alabama, New York, Pennsylvania, and Tennessee have extended statutory limitations period in cases alleging breach of warranty).  However, Smith & Nephew fails to cite any case law for the proposition that the same tolling principles applying to Plaintiffs' other claims do not apply to warranty claims.  Without more, Smith & Nephew cannot meet its burden to dismiss these claims.

Furthermore, many of Plaintiffs' states have explicitly applied tolling principles that apply to Plaintiffs' other claims to breach of express warranty.  *See, e.g., Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637-638, 2007 Cal. LEXIS 1494, *24-25 (Cal. Sup. Ct. 2007) (internal citations omitted); *Hennigan v. General Electric Co.*, Case No. 09-11912, 2010 U.S. Dist. LEXIS 103090, *13-19 (E.D. Mich. Sept. 29, 2010) (fraudulent concealment of warranty breach); *Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc.*, 396 Mass. 818, 825-26, 489 N.E.2d 172 (1986) (discovery rule); *Fehl v. Horst*, 256 Ore. 518, 524 (Ore. Sup. Ct. 1970) (discovery rule and fraudulent concealment); *Strickland v. GM Corp.*, 852 F. Supp. 956, 959, 1994 U.S. Dist. LEXIS 6203, *6 (Utah's product liability act applies in "any action for damages for personal injury, death, or property damage allegedly caused by a defect in a product," including breach of warranty claims, and the discovery rule is explicitly available in such claims by operation of the statute).  As these cases make clear, if states treat breach of warranty differently, it is to

*extend* the statute of limitations.  Therefore, Plaintiffs' breach of warranty claims are sufficiently pled within the statute of limitations.

<u>**CONCLUSION**</u>

For these reasons, this Court should deny Smith & Nephew's Motion, or, in the alternative, grant Plaintiffs leave to amend their Short Form Complaints.

Dated:  July 30, 2018                                   Respectfully Submitted,


/s/ Robert K. Jenner
Robert K. Jenner
JENNER LAW, P.C.
1829 Reisterstown Road, Suite 350
Baltimore, Maryland 21208
Phone: 410-413-2155
Facsimile: 410-982-0122
rjenner@jennerlawfirm.com

Jasper D. Ward IV                     Genevieve M. Zimmerman
JONES WARD PLC                        MESHBESHER & SPENCE LTD.
The Pointe                            1616 Park Avenue South
1205 E. Washington St., Suite 111     Minneapolis, MN 55404
Louisville, Kentucky 40206            gzimmerman@meshbesher.com
jasper@jonesward.com                  Phone: (612) 339-9121
Phone: (502) 882-6000                 Facsimile: (612) 339-9188
Facsimile: (502) 587-2007

*Counsel for Plaintiffs*


**CERTIFICATE OF SERVICE**

I, Robert K. Jenner, hereby certify that on this 30th day of July 2018, I electronically filed the foregoing with the Court using the CM/ECF system and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

/s/ Robert K. Jenner
*Robert K. Jenner*