IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: SMITH & NEPHEW BIRMINGHAM HIP RESURFACING (BHR) HIP IMPLANT PRODUCTS LIABILITY LITIGATION | * | MDL No. 2775<br>Master Docket No. 1:17-md-2775 |
| | * | JUDGE CATHERINE C. BLAKE |
| Jesse Eugene Kemp, | * | THA TRACK CASE<br>Civil No. CCB-19-372 |
| v. | *<br>*<br>* | |
| Pure Play Orthopaedics, *et al.* | * | |

## MEMORANDUM

Pending before the court is Jesse Eugene Kemp's ("Kemp") motion to remand for lack of complete diversity. *See* 28 U.S.C. § 1447(c). Smith & Nephew, Inc. ("Smith & Nephew") removed this case from the District Court of the 136th Judicial District of Jefferson County, Texas, and contends that this court has jurisdiction under the fraudulent joinder doctrine. For the reasons that follow, the court will grant Kemp's motion. The issues have been briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018).[1]

### BACKGROUND

On November 16, 2011, Kemp underwent a total hip arthroplasty at Baptist Hospitals of Southeast Texas ("Baptist Hospitals") in Beaumont, Texas. (Am. Compl. ¶ 30, ECF No. 1-3).[2]

---

[1] The court has also considered Kemp's Notice of Additional Supplemental Information and the defendant's Response. (ECF No. 91; ECF No. 95-2).

[2] This exhibit includes Kemp's Original Petition, First Amended Original Petition, and some of the defendants' answers. The court's citations to "Am. Compl." are to Kemp's First Amended Original Petition, which spans pages 30 to 80 of the 139-page exhibit.

Kemp's surgeon, Doctor Ronald E. Talbert ("Doctor Talbert"), used Smith & Nephew's hip-implant components in an "off-label" configuration that had not received FDA approval. (*Id.*). In fact, the FDA had thrice refused to approve the configuration. (*Id.*). Kemp alleges that Smith & Nephew sales representatives Chad Cross and Michael Taylor promoted this device configuration and "observed, commented on, and assisted with device implantation surgery and product selection." (*Id.* ¶¶ 44–46). Kemp alleges that the off-label configuration's metal-on-metal components created "friction allowing metal debris to enter the space around the hip implant and the bloodstream." (*Id.* ¶ 31). As a result, Kemp suffered damage to surrounding tissue and bone. (*Id.*). On October 20, 2016, Kemp underwent revision surgery. (*Id.*).

On July 5, 2018, Kemp sued Pure Play Orthopaedics,[3] JB Orthopaedics,[4] Chad Cross, Doctor Talbert, Beaumont Bone & Joint Institute, P.A. ("Beaumont Bone"),[5] and Baptist Hospitals in the District Court of the 136th Judicial District of Jefferson County, Texas. (*See* Notice of Removal at 2, ECF No. 1).

On October 17, 2018, Kemp filed an Amended Petition, adding as defendants, Smith & Nephew Consolidated, Inc.,[6] Smith & Nephew, Inc., and Michael Taylor. (Notice of Removal at 2; ECF No. 1-3 at 3). Kemp also corrected the names of defendants JB Orthopaedics and Pure Play

---

[3] Kemp alleges that this defendant had a hand in selling Smith & Nephew's products. (*See id.* ¶ 12 (grouping defendants Chad Cross, JB Orthopaedics, and Pure Play Orthopaedics together as the "Sales Rep Defendants")).

[4] Kemp alleges that "Smith & Nephew contracted with Defendants Michael Taylor and JB Orthopedic Appliances, LLC to provide on-the-job training to Smith & Nephew's full-time employee and 'service rep' Chad Cross." (*Id.* ¶ 23).

[5] Beaumont Bone is a professional association of orthopedic surgeons. (Am. Compl. ¶ 86). Kemp alleges that he first met with Doctor Talbert at Beaumont Bone, and remained a patient of Beaumont Bone during and after his surgery. (*Id.*).

[6] Kemp alleges that Smith & Nephew Consolidated, Inc. is "the parent company of Defendant Smith & Nephew, Inc." (*Id.* ¶ 4).

Orthopaedics to JB Orthopedic Appliances, LLC, and Pure Play Orthopaedics Sales, Inc., respectively. (ECF No. 1-3 at 3).

Collectively the defendants fall into three categories: (1) the health care provider defendants—Doctor Talbert, Beaumont Bone, and Baptist Hospitals; (2) the sales representative defendants—Michael Taylor, Chad Cross, JB Orthopedic Appliances, LLC, and Pure Play Orthopaedics Sales, Inc.; and (3) the Smith & Nephew defendants. (Am. Compl. ¶¶ 12, 16–17).

Kemp alleges an array of claims against the defendants, including: negligence, negligence per se, negligent misrepresentation, design defect, deceptive trade practices, conspiracy, breach of express warranty, fraud, and fraudulent concealment. (*Id.* ¶¶ 47–112).

## ANALYSIS

Kemp argues that remand is appropriate because complete diversity is lacking—all of the defendants, except for Smith & Nephew, are citizens of Texas for diversity purposes, as is Kemp. Smith & Nephew counters that complete diversity exists because all of the Texas defendants were fraudulently joined. To establish fraudulent joinder "the removing party must show either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Johnson v. American Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)) (emphasis in original). This is an exceptionally heavy burden that is "more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Johnson*, 781 F.3d at 704 (quoting *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999)). The removing party must demonstrate that "the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Johnson*, 781 F.3d at 704 (quoting *Hartley*, 187 F.3d at 424). A plaintiff's claims against non-diverse

defendants "need not ultimately succeed to defeat removal"; rather, the plaintiff "must show only a 'glimmer of hope' of succeeding against the non-diverse defendants." *Johnson*, 781 F.3d at 704 (citing *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 223 (4th Cir. 1993); *Mayes*, 198 F.3d at 466).

Smith & Nephew fails to meet this burden. Smith & Nephew contends that Kemp cannot establish a cause of action against the health care defendants based on Doctor Talbert's off-label use of the metal-on-metal device because the Food, Drug and Cosmetic Act ("FDCA") "codifies" a physician's right to use a device off-label. *See* 21 U.S.C. § 396 ("Nothing in this chapter shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship."). But Smith & Nephew is mistaken. While the FDCA does not provide a federal cause of action against physicians for off-label use of devices, or "limit or interfere" with a physician's authority to administer medical devices, it does not displace or narrow traditional state-law negligence claims against physicians who breach a duty of care in using a device off-label.[7] Smith & Nephew has put forth no argument to explain why Kemp cannot succeed on a traditional negligence cause of action.

In Texas, health care liability claims ("HCLCs"), which include claims related to alleged "departure[s] from accepted standards of medical care, or health care . . . which proximately result[] in injury or death of a claimant, whether the claimant's claim[s] or cause[s] of action sound[] in tort or contract" are governed by the Texas Medical Liability Act ("TMLA"), Tex. Civ. Prac. & Rem. Code §§ 74.301–.303, *et. seq.* TMILA § 74.001(a)(13); *see also Texas West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179–80 (Sup. Ct. Tex. 2012) (explaining that "the breadth of the HCLCs include causes of action against physicians and health care providers for negligence

---

[7] Smith & Nephew has provided no authority for its argument to the contrary.

4

in the provision of 'medical care, or health care'" (citing § 74.001(a)(13))). Kemp argues that he has fulfilled the statutory requirements of the TMLA, including by serving expert reports, and that the TMLA's two-year statute of limitations is equitably tolled in his case. (Pl.'s Mot. Remand at 2–3, ECF No. 12; Am. Compl. ¶¶ 117–20; §§ 74.251(a), (b), 74.351). Smith & Nephew has presented no argument to the contrary.

Attacking the sufficiency of Kemp's pleadings,[8] Smith & Nephew argues that Kemp "fail[ed] to make allegations connecting the decision to use the particular combination of devices" to his injuries. (Def.'s Resp. Opp'n at 9, ECF No. 25). But Kemp pleads that the off-label use of Smith & Nephew's metal-on-metal device resulted in the production of metal debris, which resulted in toxic metallosis and required revision surgery. (Am. Compl. ¶¶ 30–31). This suffices to connect Doctor Talbert's decision to use the device off-label to Kemp's resulting injury. And Kemp has further alleged that Doctor Talbert "was negligent, and his conduct fell below the standard of care because he implanted an unapproved, untested combination of parts into the Plaintiff without obtaining adequate informed consent and without having any reasonable medical basis" for believing the metal-on-metal configuration was safe. (*Id.* ¶ 78). Kemp has adequately pled his claim of negligence.

Because Smith & Nephew has not demonstrated that there is "no possibility" that Kemp can establish a cause of action in negligence against the health care provider defendants, the court need not consider all of Smith & Nephew's remaining arguments. Smith & Nephew has failed to carry its burden to establish fraudulent joinder.

---

[8] The court considers the sufficiency of the pleadings only to determine whether Smith & Nephew has met its burden of establishing fraudulent joinder.

5

## CONCLUSION

For the reasons stated above, Kemp's motion to remand will be granted. A separate order follows.

_8/22/19_
Date

_CCB_
Catherine C. Blake
United States District Judge