**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| In re: Smith & Nephew | * | MDL No. 2775 |
| Birmingham Hip Resurfacing | * | Master Docket No. 1:17-md-2775 |
| (BHR) Hip Implant Products | * | |
| Liability Litigation | * | Judge Catherine C. Blake |
| | * | |
| | * | This document relates to: |
| | * | *Caporale v. Smith & Nephew, Inc., et al.* |
| | | Case No. 1:20-cv-01440 |

## MEMORANDUM

Now pending is Gabriel Caporale's motion to remand.  (ECF 30).[1]  For the reasons stated

below, it will be granted.

## FACTS AND PROCEDURAL HISTORY

On or about January 20, 2010, Gabriel Caporale underwent right total hip replacement

surgery and was implanted with a Smith & Nephew metal-on-metal total hip replacement system

involving the use of a Reflection 3 ("R3") Metal Liner in combination with a non-Birmingham

Hip Resurfacing System.  (ECF 1-1, Compl. ¶¶ 19, 21).  He underwent the same total hip

replacement surgery on his left hip on or about June 1, 2010.  (*Id.* ¶ 23).  Both systems failed,

and Caporale had revision surgery on his right hip (on or about August 27, 2018, *id.* ¶¶ 30, 31)

and left hip (on or about November 26, 2018, *id.* ¶¶ 32, 33).  On January 17, 2020, Caporale filed

a complaint in the Circuit Court of Cook County, Illinois, against Smith & Nephew, Inc. and

Neubauer Perkins, Inc. ("NPI") alleging claims of strict product liability, negligence, and breach

of warranty.  (*See id.*).  Smith & Nephew was the designer and manufacturer of the medical

devices, and NPI was the distributor.  (*Id.* ¶¶ 13, 35).  Smith & Nephew removed the case to

---

[1] Citations to the CM/ECF system refer to Case No. 20-cv-01440.

federal court on February 20, 2020, (ECF 1), and the case was transferred to this MDL on June 4, 2020, (ECF 26, 27).  Now pending is Caporale's motion to remand.

## DISCUSSION

The court must decide whether NPI, which is incorporated in Illinois and has its principal place of business in Illinois, is a proper defendant in this case, or has been "fraudulently joined." If NPI is a proper defendant, there is no diversity jurisdiction,[2] and the motion to remand must be granted.  Smith & Nephew argues that NPI is not a proper defendant, because of 5/2-621 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-621, commonly known as the Seller's Exception Statute, and because NPI was not involved in the design or manufacture of the allegedly defective products.

To establish fraudulent joinder "the removing party must show either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original).  This is an exceptionally heavy burden that is "more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  *Id.* (quoting *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir. 1999)).  The removing party must demonstrate that "the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* (quoting *Hartley*, 187 F.3d at 424).  A plaintiff's claims against non-diverse defendants "need not ultimately

---

[2] There is no dispute that Caporale and NPI are both citizens of Illinois for the purposes of diversity jurisdiction, and if NPI was not fraudulently joined, then complete diversity is lacking and there is no diversity jurisdiction.  *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) ("[C]omplete diversity of citizenship—meaning a plaintiff cannot be a citizen of the same state as any defendant—is necessary for a federal court to exercise diversity jurisdiction.").

succeed to defeat removal"; rather, the plaintiff "must show only a 'glimmer of hope' of succeeding against the non-diverse defendants." *Johnson*, 781 F.3d at 704 (first quoting *Marshall*, 6 F.3d at 233, then quoting *Mayes v. Rapoport*, 198 F.3d 457, 466 (4th Cir. 1999)).

The Seller's Exception Statute, Section 2-621, "is applicable to product liability actions and permits a nonmanufacturer defendant, such as a retailer or other link in the distribution chain, to be dismissed from the proceedings once the product manufacturer has been identified and sued." *Kellerman v. Crowe*, 119 Ill. 2d 111, 112 (1987); *see* 735 ILCS 5/2-621.  Dismissal is not appropriate, however, if the plaintiff can show, *inter alia*, that "the defendant had actual knowledge of the defect in the product which caused the injury, death or damage."  735 ILCS 5/2-621(c)(2).  This requires a showing that the nonmanufacturer defendant "had actual knowledge of the unreasonably dangerous nature of the physical characteristics/design of the product."  *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 775 (2008).

Caporale alleges that NPI knew that the Smith & Nephew metal-on-metal system never received FDA approval or clearance and that the system was defective, unsafe, and unreasonably dangerous, (*id.* ¶¶ 28, 45, 79, 91, 147); knew that surgeons were using the modular femoral head and R3 metal liner off-label, (*id.* ¶¶ 51, 55,58); knew that using the components in configurations that had not been tested was dangerous, because it warned surgeons against using Smith & Nephew components in combination with other device manufacturer's products, (*id.*¶ 66); knew that Caporale's doctors believed that the metal-on-metal system was FDA approved and/or cleared, (*id.* ¶ 83); and received complaints of revisions, complications, failures, and other problems caused by the metal-on-metal system, (*id.* ¶ 148).  For its part, Smith & Nephew provides a declaration from Wally Perkins, President of NPI, in which he states that NPI is and

3

was unaware of any defect or unreasonably dangerous condition in Smith & Nephew products. (ECF 1-2, Perkins Aff. ¶¶ 21–24).

*Barnett v. Smith & Nephew, Inc.*, to which Caporale cites, is instructive.  No. 14 C 6307, 2015 WL 1138451 (N.D. Ill. Mar. 11, 2015).[3]  *In Barnett*, Smith & Nephew argued that NPI was fraudulently joined in the product liability action.[4]  *Id.* at *1.  There, the complaint "describe[d] a wholly atypical degree of distributor involvement on the part of Neubauer–Perkins, in which two of its people were actually present in the operating room, one during the implantation surgery and the other when the fractured hip prosthesis was removed from Barnett's body."  *Id.* at *2. The amended complaint also alleged NPI "had regular communication with the implanting surgeons who utilized the [allegedly defective device], including the surgeon who implanted the [device] . . . such that [NPI] was in a unique position to provide [Smith & Nephew] with warnings relative to the alleged defects in the [device] and did in fact provide [Smith & Nephew] with such warnings based upon complaints and comments [NPI] received from the implanting surgeons."  *Id.* at *3 (emphasis removed).  Even though Smith & Nephew had presented a declaration from Perkins asserting that NPI did not have knowledge of any defects, the court found that the complaint had plausibly alleged actual knowledge so that NPI could not be dismissed and remand was appropriate.  *Id.* at *2–3.

As in *Barnett*, Caporale alleges, although in a general manner, that NPI knew of the defects.[5]  Caporale alleges that NPI knew that surgeons were using Smith & Nephew products off-label, knew that the system had not been approved by the FDA, and received complaints of

---

[3] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

[4] *Barnett* involved the Emperion, a medical device not at issue in this case.  *Barnett*, 2015 WL 1138451, at *3.

[5] Also as in *Barnett*, it appears that NPI representatives were in the room during at least one of the surgeries on Caporale.  (*See* Compl. ¶¶ 34, 142 ("[Smith & Nephew] and/or NPI representatives were in the operating room during the surgeries performed on" Caporale)).

revisions, complications, and failures of the metal-on-metal system.  This is sufficient to allege

actual knowledge, especially under the more lenient standards of the fraudulent joinder doctrine.

*See Kopitke v. Depuy Orthopaedics, Inc.*, No. 11-CV-912, 2011 WL 856865, at *3 (N.D. Ill.

Mar. 8, 2011) ("As alleged in Kopitke's complaint, Premier is not an innocent distributor.

Rather, it knew DePuy's ASR was defective and communicated warnings to DePuy about the

defect.  Therefore, it cannot be said at this early stage in the litigation that the allegations of

Kopitke's complaint are insufficient to establish a cause of action against Premier.").

Smith & Nephew cites to *Millman v. Biomet Orthopedics, Inc.*, No. 3:13-CV-77 RLM-

CAN, 2013 WL 6498394 (N.D. Ind. Dec. 10, 2013).  There, the court found fraudulent joinder of

a nonmanufacturer defendant when the "Millmans haven't set forth specific facts supporting

their conclusion that a reasonable possibility exists that the Weis defendants had actual

knowledge of the defect in the product."  *Id.* at *3.  Here, Caporale alleges that NPI knew of the

defects and unreasonably dangerous conditions, including that the products were being used off-

label and without FDA approval, and that NPI had received complaints.  Moreover, Caporale

need only show "a glimmer of hope" of succeeding against NPI, after resolving all factual issues

– such as whether NPI knew of the off-label use and had received complaints about failures and

complications – in Caporale's favor.  *See Johnson*, 781 F.3d at 704.[6]  Additionally, although

Smith & Nephew presents a declaration by Perkins stating that NPI had no knowledge of defects,

where that declaration contradicts the allegations in the complaint, the court must be careful to

---

[6] Because the court finds that Caporale has shown a possibility of succeeding against NPI on the products liability claim, it does not reach Caporale's alternative argument that because dismissal under Section 2-621 is conditional, it cannot be the basis for finding fraudulent joinder.

resolve issues of fact in favor of Caporale.  *Id.*; *see Hartley*, 187 F.3d at 425 (court should not

"delv[e] too far into the merits" when deciding motion to remand).[7]

Caporale also brings negligence and breach of warranty claims against NPI.  These

claims are not subject to Section 2-621.  *Whelchel v. Briggs & Stratton Corp.*, 850 F. Supp. 2d

926, 936 (N.D. Ill. 2012) (section 2-621 only applies to strict products liability claims).  Smith &

Nephew argues that because NPI played no part in the design or manufacture of the products and

did not make any warranties, Caporale has no possibility of succeeding against NPI on these

claims.  Caporale's doctor, Wayne Goldstein, however, stated in a declaration that "[p]rior to and

during my use of the R3 metal liner, Smith & Nephew, Inc. and Neubauer-Perkins, Inc.

communicated to me that the R3 metal liner in combination with the R3 cup and Modular

Femoral Head in a metal-on-metal construct was appropriately tested and proven to be safe and

effective in patients," and "was the best metal-on-metal on the market, would be longer-lasting,

more durable, and have less wear than other products on the market," and that NPI knew that

Goldstein "was using the R3 metal liner in combination with the R3 cup and Modular Femoral

Head in a metal-on-metal construct" but did not tell Goldstein it should not be used that way or

was an off-label use.  (ECF 30-1, Goldstein Decl. ¶¶ 7–10).  Smith & Nephew argues that even if

this is true, it does not contradict Perkins's declaration that NPI's role was limited to

disseminating information created and prepared by Smith & Nephew.

Under Illinois law, a supplier of a product not reasonably safe may be liable for

negligence when "the defendant knew, or in the exercise of ordinary care should have known, of

---

[7] For this reason, *Laughlin v. Biomet, Inc.*, to which Smith & Nephew cites, is distinguishable, because in that case the defendant's "affidavit isn't contradicted by the allegations in Ms. Laughlin's complaint or by anything else in the record. Even the self-serving testimony of the non-diverse defendant alone can establish fraudulent joinder, if it's uncontradicted by any other evidence in the record."  No. 3:14-CV-1960-RLM-CAN, 2016 WL 626514, at *3 (N.D. Ind. Feb. 17, 2016).  Here, Perkins's declaration is contradicted by the allegations in Caporale's complaint, such as the allegations that NPI knew that using Smith & Nephew products as part of the metal-on-metal system was dangerous, and had received complaints of revisions, complications, and failures.

that unsafe condition" and failed to exercise reasonable care to inform the user of the dangerous

condition. *Brobbey v. Enter. Leasing Co. of Chicago*, 404 Ill. App. 3d 420, 430 (2010).  In

*Hilgers-Luckey v. DePuy Orthopaedics, Inc.*, the court found that the allegations against the

distributor – that it had extensive involvement with the products, including by accompanying

surgeons into the operating suite, that it knew or should have known of the problems and the

substantial failure rate, and that it violated its duty by continuing to promote the products and

failing to warn physicians – were sufficient to state a negligence claim.  No. 3:11 DP 20387,

2012 WL 5830427, at *5–7 (N.D. Ohio Nov. 16, 2012).  Here, Caporale makes similar

allegations that NPI representatives were present in the operating rooms, knew or should have

known about the problems with using the Smith & Nephew components in the metal-on-metal

system, and failed to warn physicians and continued promoting the product.  (*See* Compl., Count

V).  For the purposes of fraudulent joinder, Smith & Nephew has not shown that there is "no

glimmer of hope" of succeeding against NPI.

      In addition, Caporale's allegations and Goldstein's declaration are sufficient in showing a

possibility of success for the breach of warranty claim against NPI.  The allegations indicate that

NPI knew that the components were not fit for their intended uses, *see Cadagin v. Johnson &*

*Johnson*, No. 18-CV-1821-SMY-DGW, 2018 WL 5004716, at *3 (S.D. Ill. Oct. 16, 2018), and

that it made specific warranties to Goldstein that allegedly were untrue.  (*See* Compl., Count VI).

Again, this is sufficient especially considering the heavy burden Smith & Nephew faces in

establishing fraudulent joinder.

      Caporale also requests attorney's fees and costs.  "An order remanding the case may

require payment of just costs and any actual expenses, including attorney fees, incurred as a

result of the removal."  28 U.S.C. § 1447.  "Absent unusual circumstances, courts may award

attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Here, Smith & Nephew did not lack an objectively reasonable basis in seeking removal.  While the court finds that Smith & Nephew has not shown fraudulent joinder, the issue is not as clear-cut as Caporale contends, and Smith & Nephew presents some authority that supports its arguments. *See Millman,* 2013 WL 6498394, at *3.

## CONCLUSION

For the reasons stated above, the court will remand this case to the Circuit Court of Cook County, Illinois, and will deny the request for attorney's fees and costs.  A separate order follows.

8/24/20
_____
Date

/S/
_____
Catherine C. Blake
United States District Judge