## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| IN RE SMITH & NEPHEW BIRMINGHAM HIP RESURFACING (BHR) HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL No. 2775<br>Master Docket No. 1:17-md-2775<br><br>JUDGE CATHERINE C. BLAKE<br><br>This Document Relates to:<br><br>*All BHR Track Cases* |

### DEFENDANT SMITH & NEPHEW INC.'S RESPONSE TO PLAINTIFFS' EXECUTIVE COMMITTEE'S MOTION TO MODIFY CASE MANAGEMENT ORDER NO. 2 TO ESTABLISH AN INCREASED HOLDBACK FOR SETTLING BHR CASES

Defendant Smith & Nephew, Inc. ("Smith & Nephew") respectfully submits this response to Plaintiffs' Executive Committee's Motion to Modify Case Management Order No. 2 to Establish an Increased Holdback for Settling BHR Cases ("Motion"). Smith & Nephew feels obligated to correct certain statements of fact and opinion regarding Smith & Nephew's decisions in this litigation – and, more specifically, its decisions about whether to engage in settlement discussions – that are simply erroneous. While Smith & Nephew takes no position on whether the holdback should be increased, the Court should be fully apprised of the relevant facts before making its decision.

Plaintiffs' Executive Committee ("PEC") asserts that "newly acquired information" justifies its request to increase the holdback in BHR Track cases from 7% to 13.5%. PEC Mem. [D.E. 2858-1], at 1. That "newly acquired information" appears to be that the first BHR case is about to be tried, and that Smith & Nephew has settled a small number of BHR Track cases with certain other Plaintiffs' counsel. But there is nothing new about the fact that the BHR Track cases

would need to be litigated to the point of trial and beyond. Indeed, the PEC describes in some detail how most Plaintiffs' lawyers wanted nothing to do with the BHR litigation because of the difficulties of prevailing in a case involving a PMA-approved device and the case law finding most claims preempted as a result. Plaintiffs' leadership knew full well from the outset that this would be difficult litigation that would have to be litigated thoroughly and that any victories they obtained on motion or at trial would be subject to potential reversal on appeal. They could hardly have been surprised when, at a very early stage of the litigation, likely even before CMO 2 was first entered, Smith & Nephew made known that it did not intend to settle the BHR Track but would litigate aggressively with regard to a PMA-approved device that is, for certain sizes and populations, still on the market and in use. Smith & Nephew assumes that, prior to petitioning this Court for appointment to the leadership of this MDL, the PEC members would have given full consideration to the work required for resolution of these cases, either by trial or settlement, given Smith & Nephew's defenses and the problems in litigation involving a PMA-approved device. The PEC's assertion that the percentage holdback should now be increased "to reflect the realities of the litigation at this pivotal point in the case" suggests that these realities are new, when they have been known all along.

In contrast to the BHR Track, Smith & Nephew made known to the PEC and the Court very early on that it was more than willing to entertain a settlement on a global basis of THA Track cases. Smith & Nephew had already settled hundreds of THA cases filed in Shelby County, Tennessee, before the MDL was established, at what has been accepted by numerous Plaintiffs' counsel as reasonable amounts, consistent with Smith & Nephew's evaluation of the cases on an individual basis. Smith & Nephew told the PEC it would be willing to settle the THA Track cases

on the same basis as used in all the prior settlements. It should be noted that the prior THA settlements were the result of lengthy negotiations, through multiple mediations.

Settlement discussions ensued in this litigation, including a number of meetings and sessions with two different mediators, to no avail. The PEC has simply refused to accept the approach to valuation used successfully by Smith & Nephew in hundreds of other THA settlements, apparently in the mistaken belief that merely by being consolidated in an MDL, these very same cases were worth far more than the same types of cases outside the MDL. The PEC's position led to a cessation of settlement communications between Smith & Nephew and the PEC that lasted nearly two years.

Meanwhile, in the fall of 2020, Smith & Nephew began discussing settlement of THA Track cases with certain Plaintiffs' counsel who were open to settlement on a similar basis to the Shelby County settlements. The first such settlements were reached in late 2020, and in early January 2021, Smith & Nephew made its first request to Plaintiffs' Liaison Counsel Robert Jenner to confirm the applicability of the 7% assessment under CMO 2. That was the first request of many. The 7% assessment was confirmed in each instance, and paid by Smith & Nephew into the account set up by the PEC. To date, 71 THA cases have been settled, and numerous dismissals have been filed and approved by the Court. More are in the works and expected in the near future.

As an outgrowth of these THA settlement discussions, which Smith & Nephew has been involved in for many months now, some Plaintiffs' lawyers approached Smith & Nephew to see if the company would be interested in discussing settlement of their BHR Track cases as well. Certain of these Plaintiffs' counsel have expressed frustration with Plaintiffs' Leadership and desired to settle their cases and exit the MDL. Smith & Nephew did not, as the PEC asserts, reach out to these counsel, but it did respond favorably to those who have been willing to discuss

reasonable settlements. Smith & Nephew has made no secret of the fact that it values the BHR cases at considerably lower values than the THA cases. In addition, it has filed a motion for summary judgment applicable to the male, large head BHR cases, as to which the PEC has developed no evidence whatsoever to support the claims made in the BHR Track MACC. It is notable that, despite expressing confidence that those cases have merit, the PEC has urged this Court to postpone consideration of the motion. None of those cases have settled, and that will likely continue to be the situation as long as the summary judgment motion is pending and unresolved. Smith & Nephew once again urges the Court to take up that motion and decide it so as to facilitate resolution of these cases, one way or the other.

The PEC's grandiose assertions that only because of their efforts has Smith & Nephew begun to settle a small number of BHR Track cases are entirely incorrect. *See, e.g*., PEC Mem. at 6 ("This result is because of the efforts of the PEC/PSC entirely."); 3 (referring to the need to compensate the counsel "involved in incentivizing Defendant to settle the BHR plaintiffs' cases"); 8 ("The fact that Smith & Nephew is willing to resolve *any* of these cases is a direct result of the perseverance of the Plaintiffs' counsel, appointed by this Court…").  Indeed, nothing could be further from the truth. It is not the impending first BHR trial that led to the first BHR Track case settlements. Smith & Nephew is prepared for trial and intends to try the *Redick* case to demonstrate that the BHR Track cases lack merit, and to exhaust all appeals if necessary. Rather, the settlements occurred due to the expressed  frustration of some Plaintiffs' counsel with the PEC's approach to the litigation and the desire to settle out of the MDL to get out from under this leadership group. "[T]he PEC's work has [indeed] now caused the landscape to change," PEC Mem. at 10, but not in the way that the PEC suggests.

As Smith & Nephew has previously advised the Court, it is concerned that, after the PEC approved the 7% holdback on the first BHR Track settlement and then retracted that approval, the PEC's current effort to increase the holdback by almost 100% will act to put a halt to the settlements of BHR Track cases. And despite the opportunity to settle the THA Track on a global basis two years ago or more, the PEC continues its aggressive litigation of the THA Track cases, raising the question of whether it seeks the increased holdback on BHR Track cases to help fund the ill-advised THA Track effort.

Given the very reasonable settlement amounts under discussion in the BHR Track, a 13.5% holdback will likely make settlements more challenging. It is likely that, as a direct result of the increased holdback, if approved, some Plaintiffs' counsel will decide they have no choice but to wait and hope that someday the PEC will be able to deliver higher settlement amounts. This deprives those plaintiffs who may want to settle their cases, rather than wait for multiple trials and appeals to unfold over many years, of the opportunity to do so. And, of course, a higher holdback will also impair Smith & Nephew's right to negotiate with any willing counsel who want to be reasonable about settlement values, and to resolve the litigation to the extent that is possible.

Finally, Smith & Nephew notes that the PEC requests that the Court "order that no settlement funds be released until the Court has ruled on this Motion." PEC Mem. at 13. Presumably, that excludes the four BHR Track cases already settled, to which the PEC agrees its Motion does not apply. But Smith & Nephew believes it should be able to continue settling BHR Track cases on the basis of the existing 7% holdback (one such case has already been settled and has been notified to Mr. Jenner) and that any future increase in the holdback, if approved by the Court, should be prospective only.

Smith & Nephew appreciates the opportunity to make the Court aware of the relevant facts so that it can consider the merits, if any, of the PEC's Motion with a clear view of the realities of the litigation and settlements to date.

Dated:  July 8, 2021                                    Respectfully Submitted,


Timothy F. Daniels                                     ___/s/ Terri S. Reiskin_____
Kim E. Moore                                           Terri S. Reiskin (Bar No. 05256)
IRWIN FRITCHIE URQUHART & MOORE LLC                    NELSON MULLINS RILEY & SCARBOROUGH LLP
400 Poydras St. #2700                                  101 Constitution Ave., NW, Suite 900
New Orleans, Louisiana 70130                           Washington, DC 20001
tdaniels@irwinllc.com                                  terri.reiskin@nelsonmullins.com
kmoore@irwinllc.com                                    Tel.: (202) 689-2800
Tel.: (504) 310-2100                                    Fax: (202) 689-2860
Fax: (504) 310-2101

 Jana D. Wozniak                                       Paul J. Zidlicky (Bar No. 26148)
 Daniel A. Spira                                       SIDLEY AUSTIN LLP
 SIDLEY AUSTIN LLP                                     1501 K Street, N.W.
 One South Dearborn                                    Washington, DC 20005
 Chicago, Illinois  60603                              pzidlicky@sidley.com
 jwozniak@sidley.com                                   Tel.: (202) 736-8000
 dspira@sidley.com                                     Fax: (202) 736-8711
 Tel.: (312) 853-7000
 Fax: (312) 853-7036


*Counsel for Defendant Smith & Nephew, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Terri S. Reiskin*