## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE SMITH & NEPHEW BIRMINGHAM HIP RESURFACING (BHR) HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL No. 2775<br>Master Docket No. 1:17-2775<br><br>JUDGE CATHERINE C. BLAKE<br><br>This Document Relates to:<br>*Frances Ann Standridge, et al. v. Smith & Nephew, Inc., et al.*,<br>Case No. 1:21-cv-758 |

### MEMORANDUM

Pending before the court is a motion to remand for lack of complete diversity, *see* 28 U.S.C. § 1447(c), filed by plaintiffs Frances Ann Standridge, Ronald Charles Zwernemann, Johnnie Faye Hines, Sidney Holman Poynter, and Richard Allen Berry (hereafter "the plaintiffs"). Defendant Smith & Nephew, Inc., ("Smith & Nephew") removed this case from state court in Dallas County, Texas, and contends that this court has jurisdiction under the fraudulent joinder doctrine. For the reasons that follow, the court will grant the plaintiffs' motion. The issues have been briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021).

### BACKGROUND

In 2009 and 2010, the plaintiffs underwent total hip arthroplasty surgeries replacing their hips with "metal-on-metal" implants the components of which were produced by Smith & Nephew and sold by various sales representatives:

1

| Plaintiff | Dates and Surgeries | Surgeon | Sales Representative |
|---|---|---|---|
| Frances Ann Standridge | February 2009; left hip | Dr. David Hester | Steven C. Dockery and his company SCD Medical Device Sales (hereafter "Mr. Dockery") |
| Ronald Charles Zwernemann | July 2009; right hip | | |
| Johnnie Faye Hines | March 2010; right hip | | |
| Sidney Holman Poynter | August 2010; right hip | Dr. Steven Weeden | Jon Michael Greeson, Jr., and his company JMG Medical Sales Inc. (hereafter "Mr. Greeson") |
| Richard Allen Berry | September 2010; right hip | Dr. Dale Funk | Malcolm "Todd" Redwine and his company Totally Kountry, LLC (hereafter "Mr. Redwine") |

(ECF 1-1, Pls.' Original Pet. ¶¶ 2–20).

The plaintiffs' surgeons used the hip-implant components in an "off-label" metal-on-metal configuration that had not received Food and Drug Administration (FDA) approval. (*Id.* ¶ 57). The metal components rubbed against one another after implantation, creating friction that the plaintiffs allege leeched metal into their bloodstreams and caused a variety of negative health effects. (*Id.* ¶ 131).

The plaintiffs filed a Texas state court suit against Delaware manufacturer Smith & Nephew and three Texas entities: Mr. Dockery, Mr. Greeson, and Mr. Redwine — collectively, "the Sales Rep Defendants." (*Id.* ¶¶ 7–21). The petition describes the Sales Rep Defendants as "a group of commission-based, 'independent' distributors and salesmen who worked together and with Smith & Nephew to circumvent Federal law and provide unapproved devices to surgeons. The Sales Rep Defendants are Smith & Nephew's local distributors and physician contact points." (*Id.* ¶ 57).

2

The plaintiffs allege that the Sales Rep Defendants assisted with the doctors' selections of the surgeries and devices and played a key role in providing confusing information to the doctors. (*Id.* ¶ 58). In particular, they misrepresented that the device components (in a metal-on-metal configuration) were FDA-approved and indicated for certain specific uses, like a traditional total hip arthroplasty, but they did not disclose to the plaintiffs' doctors that this was an off-label use that had been rejected by the FDA. (*Id.* ¶¶ 57, 119). This false information that they conveyed was intended to deceive the doctors and to induce them to prescribe the metal-on-metal device components, all in violation of Smith & Nephew's (albeit "half-heartedly enforced") off-label promotion policy. (*Id.* ¶¶ 68, 69, 92). Their oral misrepresentations to the surgeons ignored Smith & Nephew's Sales Rep Agreement and Code of Conduct because they knew the surgeon would not use unapproved or investigational parts. (*Id.* ¶ 104, 105). Further, they removed the device components from their boxes, which noted that the components were cleared only for specific types of surgery that the plaintiffs did not undergo. (*Id.* ¶ 106).

The Sales Rep Defendants' responsibilities extended beyond the alleged misrepresentations and insufficient warnings. According to the plaintiffs, they "independently verified that the correct goods got to the operating room, and documented everything on Smith & Nephew corporate forms and company-supplied handheld devices." (*Id.* ¶ 58).

The petition addresses the Sales Rep Defendants' degree of control over the warnings and instructions as to the components. It alleges that the Sales Rep Defendants' role in Smith & Nephew's operation "gave them *substantial control over the warnings, instructions, and product information* accompanying the components" used in the plaintiffs' surgeries. (*Id.* ¶ 57) (emphasis added). Somewhat contradictorily, the petition later undermines their level of control, saying that they "were called 'independent,' but their agreement with Smith & Nephew still *gave Smith &*

3

*Nephew complete direction and control* over literally everything the Sales Rep Defendants did, thought, or said . . . ." (*Id.* ¶ 59) (emphasis added).

The petition alleges a variety of tort claims against the Sales Rep Defendants: negligence and gross negligence (*Id.* §§ IX, XI, XVII), strict products liability (*Id.* §§ XII, XIII), deceptive trade practices (*Id.* § XIV), breach of warranty (*Id.* §§ XV), and conspiracy (*Id.* § XVI).

Smith & Nephew filed its Notice of Removal in March 2021, alleging that the Sales Rep Defendants were fraudulently joined and that without them there was complete diversity, which would allow federal subject matter jurisdiction. (ECF 1 ¶ 11). The plaintiffs filed their motion to remand in March 2021; that motion was stayed as the case was transferred to the District of Maryland as part of the ongoing multi-district litigation against Smith & Nephew, and the plaintiffs renewed their motion to remand at the end of that month.

## LEGAL STANDARD

### Improper joinder in the Fifth Circuit

The court does not have subject matter jurisdiction under 28 U.S.C. § 1332 unless the parties are completely diverse and the amount in controversy exceeds $75,000. Failure to satisfy the diversity requirement is fatal to subject matter jurisdiction and, therefore, to a successful removal by defendants. The removing party bears the burden of establishing the basis for federal jurisdiction. *See St. Paul Reins. Co., Ltd. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir.1998).

To establish improper[1] joinder — that is, the improper joinder of a non-diverse defendant — the removing party must show either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003). This case concerns only the latter.

---

[1]  The Fifth Circuit prefers the term "improper joinder" to "fraudulent joinder." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004).

"The burden of persuasion on those who claim [improper] joinder is a heavy one." *Travis*, 326 F.3d at 649. "[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is *no possibility* of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (rejecting all other formulations of the test, even if similar) (emphasis added). "Nonetheless, this possibility must be reasonable and not merely theoretical." *Hutchens v. Smith & Nephew, Inc.*, 3:13-cv-4979-B, 2014 WL 4177306 at \*3 (N.D. Tex. Aug. 22, 2014) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

The court may resolve this issue by conducting "a Rule 12(b)(6)-type[2] analysis, looking initially at the allegations of the complaint[3] to determine whether the complaint states a claim under state law against the in-state defendant. If the plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573 (footnotes omitted); *see Kirby v. Smith & Nephew, Inc.*, No. 3:15-cv-2543-L, 2017 WL 661373, \*5 (N.D. Tex. Feb. 17, 2017) (citing *International Energy Ventures Management, L.L.C. v. United Energy Group, Limited*, 818 F.3d 193, 208 (5th Cir. 2016)).

---

[2] In the Fifth Circuit, the federal pleading standard applies rather than Texas's state "fair notice" pleading standard. *International Energy Ventures Management, LLC v. United Energy Group, Ltd.*, 818 F.3d 193, 200–01 (5th Cir. 2016) (abrogating prior Fifth Circuit caselaw that had applied the less stringent state pleading standard in fraudulent joinder cases).

[3] In rare cases, the court may pierce the pleadings to find facts that the pleadings misstated or omitted but that would determine the propriety of joinder. *Id.* at 573–74. If the court conducts this inquiry, it may consider summary judgment-type evidence in the record but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2004) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)). That approach is not applicable to the present motion.

5

To survive a motion to dismiss, the complaint must articulate "the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated otherwise, to withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010). The court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Kirby v. Smith & Nephew, Inc.*, No. 3:15-cv-2543-L, 2017 WL 661373, *5 (N.D. Tex. Feb. 17, 2017) (citing *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007)). But the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); see also *Iqbal*, 556 U.S. at 664 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

**Texas state law on seller liability**

Texas law protects non-manufacturing sellers from products liability except under certain circumstances set forth in the relevant statute. Under that statute, a products liability action means "any action against a manufacturer or seller for recovery of damages arising out of personal injury . . . allegedly caused by a defective product whether the action is based in strict

6

tort liability, strict products liability, negligence, misrepresentation, breach of express or implied

warranty, or any other theory or combination or theories." Tex. Civ. Prac. & Rem. Code §

82.001(2). A "seller" distributes a product in the stream of commerce for commercial purposes,

and a "manufacturer" designs, formulates, constructs, rebuilds, produces, processes, or assembles

a product and places it in the stream of commerce. *Id.* §§ 82.001(3), (4). Texas law presumes that

a non-manufacturing seller "is not liable for harm caused to the claimant by that product unless

the claimant proves" one of seven[4] exceptions. *Id.* § 82.003(a) (2003).

Any recovery theory pleaded against a nonmanufacturing seller, such as the Sales Rep

Defendants in this case, must invoke one of the seven exceptions in § 82.003(a) "even if the

allegations would otherwise state a valid claim under Texas Law." *State Farm Lloyds v. Polaris*

*Indus., Inc.*, 2012 WL 3985128 at *2 (S.D. Tex. 2012). But the pleadings need not be explicit as

to which exception the plaintiff seeks to apply. Although the plaintiff's pleadings "need not

---

[4] A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:

(1) that the seller participated in the design of the product;

(2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;

(3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;

(4) that:

   (A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;

   (B) the warning or instruction was inadequate; and

   (C) the claimant's harm resulted from the inadequacy of the warning or instruction;

(5) that:

   (A) the seller made an express factual representation about the aspect of the product;

   (B) the representation was incorrect;

   (C) the claimant relied on the representation in obtaining or using the product; and

   (D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

(6) that:

   (A) the seller actually knew of a defect to the product at the same time the seller supplied the product; and

   (B) the claimant's harm resulted from the defect; or

(7) that the manufacturer of the product is:

   (A) insolvent; or

   (B) not subject to the jurisdiction of the court.

Tex. Civ. Prac. & Rem. Code § 82.003(a)(1)–(7) (2003).

specifically cite to any of the seven exceptions to non-liability, so long as the [p]laintiff[] fairly state[s] a claim that falls within any one or more of the exceptions, remand is appropriate." *Casas v. The Tire Corral, Inc.*, 2005 WL 6773889, at *3 (S.D. Tex. Mar. 31, 2005).

## ANALYSIS

### I.  The inaccurate warnings exception to seller immunity

The plaintiffs have pled a variety of causes of action against the Sales Rep Defendants, and only one needs to be sufficient to defeat federal diversity jurisdiction and require a remand to Texas state court. The core of Smith & Nephew's fraudulent joinder argument is that the Sales Rep Defendants cannot possibly be liable under Texas law, because they are non-manufacturing sellers and no exception to § 82.003 applies. (ECF 18 at 6).

Smith & Nephew primarily argues that the plaintiffs have failed to prove the Sales Rep Defendants fall under the inaccurate warnings exception to § 82.003.[5] That exception bars seller liability unless the plaintiffs can prove that "(A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product; (B) the warning or instruction was inadequate; and (C) the claimant's harm resulted from the inadequacy of the warning or instruction." Tex. Civ. Prac. & Rem. Code § 82.003(a)(4). The Sales Rep Defendants, Smith & Nephew argues, were a mere "conduit" for Smith & Nephew's warnings, just as they were a conduit for the product itself. (*Id.* at 9).

Smith & Nephew understandably relies upon the plaintiffs' language about Smith & Nephew's "complete direction and control over literally everything [the Sales Rep Defendants] did, thought, or said" to attack their invocation of the inaccurate warnings exception. (ECF 18 at 7) (citing ECF 1-1 ¶ 59). Smith & Nephew argues that the language of Petition ¶ 59 admits that

---

[5] The plaintiffs do not specifically identify which, if any, other exception they believe is applicable.

the Sales Rep Defendants cannot possibly be liable, because they did not independently exercise "substantial control over the content of a warning or instruction that accompanied the process" as required by the inaccurate warnings exception to seller immunity. Smith & Nephew further argues that the Petition ¶ 59 language exposes the true nature of its relationship with the Sales Rep Defendants and that any language to the contrary should be viewed through the lens of Petition ¶ 59. (ECF 18 at 7).

The court concludes, however, that the plaintiffs' petition contains enough other factual allegations of the Sales Rep Defendants' control over the warnings to meet the Rule 12(b)(6) standard, even beyond its allegation that the Sales Rep Defendants had "substantial control over the warnings, instructions, and product information accompanying the components" used in the plaintiffs' surgery. (ECF 1-1, Petition ¶ 57; ECF 18 at 8). And while the petition appears to contain contradictory allegations as to this question, the plaintiffs benefit from the favorable standard of review at this stage, requiring that any such contradictions be construed in their favor.

The warnings in this case take several different forms. Written warnings passed along from Smith & Nephew to the surgeon without modification by the Sales Rep Defendants certainly appear to use the Sales Rep Defendants as a mere conduit, and their substantial control over such warnings is unlikely. But the plaintiffs also note oral[6] communications between the Sales Rep Defendants and the surgeons, and Texas courts consider oral warnings and instructions under the § 82.003(a)(4) analysis. *Transcontinental Ins. Co. v. Briggs Equipment Trust*, 321 S.W.3d 685, 702 (Tex. App.—Houston [14th Dist.] 2010) (concluding the lower court had erred in summarily finding Briggs had not exerted § 82.003(a)(4) substantial control over the

---

[6] "They orally provided Plaintiffs' surgeons with false information about the Device Components and hid the products' true dangers, investigational nature, and limited uses." (Petition ¶ 105).

9

warnings/instructions, where a Briggs employee installed a machine without a critical part and orally said that he "felt comfortable" with it and that it was "okay"); *cf. Martinez v. Medical Depot, Inc.*, 434 F. Supp. 3d 537, 552–53 (S.D. Tex. 2020) (finding the plaintiff did not provide sufficient evidence calling into question the written or oral instructions' adequacy). This alleged oral information was not a general assurance that the products lacked any defect; instead, it provided specific and false information that hid the products' dangers in the off-label metal-on-metal configuration used here. *Compare Helm v. Moog, Inc.*, No. 4:11-cv-109-Y, 2011 WL 3176439 at *4 n.2 (N.D. Tex. July 27, 2011) *to In re Yamaha Motor Corp. Rhino ATV Products Liability Litigation*, No. 3:09-md-2016-JBC, 2009 WL 939279, *3–4 (W.D. Ky. April 6, 2009). To be sure, the petition acknowledges that both Smith & Nephew and the Sales Rep Defendants deviated from written materials and the Code of Conduct, and it is possible that the Sales Rep Defendants' oral warnings deviated from written materials in exclusively the ways Smith & Nephew prescribed, thus making them mere conduits. But viewing the oral warnings (and failures to warn) in the light most favorable to the plaintiffs, the petition sufficiently alleges that the Sales Rep Defendants exercised substantial control over the oral warnings such that there is a possibility of recovery. Given that the petition moves beyond mere conclusory allegations to include these facts, the court resolves any apparent contradictions within the petition in the plaintiffs' favor and concludes that they sufficiently plead the Sales Rep Defendants' substantial control[7] over the content of a warning and, therefore, a reasonable possibility of overcoming § 82.003 non-manufacturing seller immunity.

---

[7] The plaintiffs highlight another relevant category of warnings: The Sales Rep Defendants removed the device components from their boxes before delivering them to the surgeons, and these boxes noted that the components were cleared only for specific types of surgery not applicable to the plaintiffs. While this fact might arise from a mere coincidence or regular business practice of unboxing the components, a 12(b)(6) analysis requires that the court construe it in favor of the plaintiffs, who pleads it as an act of concealment. (ECF 1-1 ¶ 110). It is a closer question whether the omission or withholding of warnings or instructions can meet the standard of § 82.003(a)(4)(A) substantial control, where the seller did not personally craft the warnings but removed them.

Perhaps later stages of litigation will reveal that the facts do not support the plaintiffs' allegations that the Sales Rep Defendants exercised substantial control over the content of the warnings. But on a motion to remand evaluated like a Rule 12(b)(6) motion to dismiss, the court considers their petition as a whole instead of focusing on one contradictory allegation. The plaintiffs have successfully filed a pleading that could possibly hold the Sales Rep Defendants liable. In failing to eliminate the § 82.003(a)(4) exception to seller liability, Smith & Nephew has not demonstrated that there is "no possibility" the plaintiffs can establish a cause of action against the Sales Rep Defendants. The court need not consider all of Smith & Nephew's remaining arguments. Smith & Nephew has failed to carry its "heavy" burden to establish improper joinder.

## II. Attorneys' fees and costs

The plaintiffs have also requested attorneys' fees and costs incurred as a result of the removal, under 28 U.S.C. § 1447(c). The trial court has wide discretion in assessing these expenses. *Penrod Drilling Corp. v. Granite State Ins. Co.*, 764 F. Supp. 1146, 1147 (S.D. Tex. Oct. 17, 1990) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974)). But there is still a relevant legal standard: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Probasco v. Wal-Mart Stores Texas, LLC*, 766 Fed. App'x 34, 36 (5th Cir. 2019) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). Smith & Nephew's positions on the contradiction within the plaintiffs' pleadings and the applicability of § 82.003 exceptions were not unreasonable, even though they were ultimately unsuccessful under

---

*See FLS Miljo, Inc., v. Munters Corp.*, 682 F. Supp. 2d 681, 694–95 (N.D. Tex. 2010) (no substantial control where the seller received but did not pass along material data safety sheets whose content it did not at all control). The court does not reach this question.

11

12(b)(6) review. The court will not award the plaintiffs attorneys' fees and costs incurred by the removal.

## CONCLUSION

For the reasons discussed herein, the plaintiffs' motion will be granted, but costs will be denied. A separate Order follows.

_11/8/21_
Date

_CCB_

Catherine C. Blake
United States District Judge