**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **IN RE: SMITH & NEPHEW BIRMINGHAM HIP RESURFACING (BHR) HIP IMPLANT PRODUCTS LIABILITY LITIGATION** | MDL No. 2775<br>Master Docket No. 1:17-md-2775<br><br>JUDGE CATHERINE C. BLAKE<br><br>THIS DOCUMENT RELATES TO ALL MDL ACTIONS |

## <u>MEMORANDUM</u>

Smith & Nephew moved to maintain the confidential status of certain documents filed in this litigation. Mot. to Maintain Confidential Status, ECF 5094 ("Mot."). The Plaintiffs opposed the motion, Opp'n to Mot., ECF 5104 ("Opp'n"), and Smith & Nephew replied, Reply in Supp. of Mot., ECF 5197. No oral argument is necessary to resolve the motion. *See* Local Rule 105.6. For the following reasons, the court will grant Smith & Nephew's motion in large part and deny it in part.

## BACKGROUND

At the outset of this Multi-District Litigation ("MDL"), the parties negotiated and stipulated to a Protective Order to facilitate document production during discovery. Protective Order, ECF 88. The Protective Order provides that the parties may designate as "Confidential Material" items including "[i]nformation prohibited from disclosure by statute," "[i]nformation that reveals trade secrets," "[r]esearch, technical, commercial, or financial information that the party has maintained as confidential," private personal information, "[p]ersonnel or employment records of a person who is not a party to the case," "[a]ny information that a Party believes to be subject to federal, state, or foreign data protection laws, privileges, or other privacy obligations," and anything derived from Confidential Material that is not otherwise publicly available. *Id.*

¶¶ 3(a)(i)-(vii). In agreeing to the Protective Order, the parties confirmed that they would only designate as confidential items that they "reasonably believe[d] to be entitled to confidential treatment." *Id.* ¶ 3(a).

When filing Confidential Material with the court, the parties agreed to submit only what was "required in connection with motions, briefs, or other court filings," *id.* ¶ 10(a), and to confer well before filing about applying appropriate redactions or de-designating Confidential Material when possible, *id.* ¶ 10(c). In the absence of an agreement to redact or de-designate Confidential Material, the parties agreed to file it under seal. *Id.* ¶ 10(d). The Protective Order also establishes a procedure for challenging Confidential Material designations, by which the non-designating party can shift the burden to the designating party to establish the item's confidentiality. *Id.* ¶ 9. The challenge procedure requires that the challenging party specifically identify the Confidential Material it argues was improperly designated and limits the number of permissible objections by both time and volume. *Id.* ¶ 9(d). When it approved the Protective Order, the court specifically found that good cause had been shown for maintaining the confidentiality of certain documents that would be produced in discovery. *Id.* at 1.

Throughout this litigation, Smith & Nephew produced countless documents that it designated Confidential Material under the Protective Order. The Plaintiffs did not object to these designations in relevant part. Furthermore, the Plaintiffs frequently filed exhibits and motions involving Confidential Material entirely under seal, and filed confidential documents in full form when only portions were relevant to the issue at hand.

Now, as this MDL nears its conclusion, the parties have agreed that some documents designated Confidential Material that were filed in support of dispositive motions can be unsealed. *See* Mot. Ex. A, ECF 5094-2. But they disagree about others and, after attempting to

resolve their disputes without judicial intervention, Smith & Nephew now asks the court to maintain the sealed status of certain documents. *See* Mot. Ex. B, ECF 5094-3.

## LEGAL STANDARDS

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980)). This right "derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). The two sources apply to different documents and require different justifications to prohibit public access. *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). "The distinction between the rights of access afforded by the common law and the first amendment is 'significant,' because the common law 'does not afford as much substantive protection to the interests of the press and the public as does the First Amendment.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *In re Balt. Sun Co.*, 886 F.2d 60, 64 (4th Cir. 1989) and *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). But in either case, "the public's right of access . . . may be abrogated only in unusual circumstances." *Stone*, 855 F.2d at 182; *Va. Dep't of State Police*, 386 F.3d at 576.

"The common law presumes a right of the public to inspect and copy 'all judicial records and documents.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Stone*, 855 F.2d at 180) (internal quotation omitted). The presumption "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253. Finding the balance between

these considerations is left to the discretion of the trial court. *Id.* (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)); *Va. Dep't of State Police*, 386 F.3d at 575.

The First Amendment's right of access applies "'only to particular judicial records and documents,' and, when it applies, access may be restricted only if closure is 'necessitated by a compelling government interest and the denial of access is 'narrowly tailored to serve that interest.'" *Doe*, 749 F.3d at 266 (quoting *Stone*, 855 F.2d at 180 and *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). Considering these interests is also left to the trial court's discretion when sealing is challenged "by private litigants who had access to all the underlying documents in the proceeding." *Jones v. Lowe's Cos., Inc.*, 845 F. App'x 205, 213 & n.1 (4th Cir. 2021) (unpublished opinion) (citing *Va. Dep't of State Police*, 386 F.3d at 577 n.6).

The burden is always on the party seeking to restrict access to show either "some significant interest that outweighs the [common law] presumption," *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Rushford*, 846 F.2d at 253), or to "present specific reasons" that the First Amendment right should be overcome. *Id.* (citing *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 15 (1986)).

When tasked with determining whether to place documents under seal, a district court must first "determine the source of the right of access with respect to each document" so that it can "accurately weigh the competing interests at stake." *Va. Dep't of State Police*, 386 F.3d at 576 (quoting *Stone*, 855 F.2d at 181). Then, the court must weigh "the appropriate competing interests," "consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings for its decision and the reasons for rejecting alternatives to sealing)." *Id.* (citing *Stone*, 855 F.2d at 181). Additionally, the public must be

4

given notice of the request to seal and a reasonable opportunity to challenge it. *Id.* (citing *Stone*,

855 F.2d at 181).[1]

## ANALYSIS

### I.  Protective Order

The documents at issue have already been sealed either at the Plaintiffs' request or

without their opposition. Smith & Nephew primarily contends that the Plaintiffs cannot now

assert the public's right of access to unseal documents because they were sealed pursuant to the

mutually agreed Protective Order. Although the presumption is in favor of public access to

documents, courts in this circuit have repeatedly recognized that it is inappropriate for a party to

weaponize the public right of access to undermine a protective order to which it agreed. *See*

*Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004); *Longman v. Food Lion, Inc.*,

186 F.R.D. 331, 333-35 (M.D.N.C. 1999); *Myles v. Rent-A-Center, Inc.*, No. 15-cv-300-JKB,

2016 WL 3077399, at *1-4 (D. Md. June 1, 2016). In complex cases such as this one, a

protective order is often "essential to the efficient functioning of the discovery process,"

*Longman*, 186 F.R.D. at 333, and the confidentiality it affords benefits all parties by facilitating

"a more open discovery" from a party producing sensitive materials, *Pittston*, 368 F.3d at 406.

Undoubtedly, Smith & Nephew "relied on this protection in producing documents." *Longman*,

186 F.R.D. at 333. However, the "the reasons for granting a protective order to facilitate pre-trial

discovery may or may not be sufficient to justify proscribing the First Amendment right of

access to judicial documents." *Rushford*, 846 F.2d at 254; *see Chaplick for Canal Vista Trust v.*

*Jeng Fen Mao*, 215 F. Supp. 3d 470, 478 (D. Md. 2016) ("[A] protective order . . . is insufficient

---

[1] The public has had notice and ample time to challenge the instant request: Smith & Nephew filed its Motion on the public MDL docket on October 20, 2023. Mot. to Maintain Confidential Status, ECF 5094.

by itself to justify the continued sealing of filings in court." (citing *Va. Dep't of State Police*, 386 F.3d at 576)).

Faced with these conflicting considerations, courts in the present procedural posture have generally looked to a protective order's terms and the actions of the parties to determine whether to reconsider the sealed status of documents. In *Longman*, the Middle District of North Carolina held that a protective order supported maintaining documents under seal when the order protected "confidential business information" and provided the parties with a procedure for challenging confidential designations, and the plaintiffs "did not challenge any of the confidentiality designations during discovery" and "submitted much of this discovery material to the Court . . . under seal." 186 F.R.D. at 332, 333-35. Similarly, in *Myles*, Chief Judge Bredar of this court did not consider the plaintiffs' public access argument for unsealing documents produced under a protective order which reflected "a deliberate balance that the Court struck in this case: . . . requir[ing] Defendants to produce substantial, potentially proprietary, material for Plaintiffs' inspection, on condition that such material would be used only for purposes of this litigation and would be filed under seal." 2016 WL 3077399, at *2. The order in *Myles* permitted the plaintiffs to raise particularized objections to confidentiality designations, which they failed to do. *Id.* In contrast, in *Waterkeeper Alliance, Inc. v. Alan & Kristin Hudson Farm*, Judge Grimm determined that a protective order was insufficient to maintain documents under seal because the order "permit[ted] unlimited designation of documents as confidential" and the plaintiff had repeatedly objected to the defendants' confidentiality designations. 278 F.R.D. 136, 144-45 (D. Md. 2011).

Furthermore, the Fourth Circuit has instructed that the identity of the party seeking to unseal documents is a critical element of the calculus. In *Pittston*, the court affirmed the district

6

court's denial of a motion to unseal that was filed by a litigant who was a party to the protective order and who "already had access to the documents covered by the protective order." 368 F.3d at 406. The Fourth Circuit has distinguished *Pittston* from other unsealing cases where the movant was a third party without any access to the sealed record. *Id.* (distinguishing *Rushford*, 846 F.2d at 252-54, because in that case the movant "did not have access to the documents"); *Va. Dep't of State Police*, 386 F.3d at 577 n.6 (citing "intervention by [third parties]" as distinguishing the case from *Pittston*).

These cases suggest that now, after reaping the benefits of expansive discovery thanks to the Protective Order and filing numerous documents under seal (often without attempting to limit the sealing to Confidential Material), the Plaintiffs may not repudiate that agreement by contending that the confidentiality it affords should be overcome by the public's interest in access. *Cf. Myles*, 2016 WL 3077399, at *3 (collecting cases). Confidential Material designations under the Protective Order were limited to information that would generally be subject to sealing, Protective Order ¶¶ 3(a)(i)-(vii), and in approving the Order the court found good cause for permitting such information to be filed under seal, *id.* at 1. The parties were permitted to challenge Confidential Material designations when made, *id.* ¶ 9, and the Plaintiffs had ample opportunity to seek redaction or de-designation of Confidential Material before filing it under seal, *id.* ¶ 10(c), but did not follow those procedures. Moreover, the Plaintiffs were free to oppose any of Smith & Nephew's motions to seal, but did not do so, and themselves filed many documents under seal. The Plaintiffs' concerns about the public's access to information were not noted while Smith & Nephew was producing documents and when they were filing dispositive motions, *see Longman*, 186 F.R.D. at 333, and their expansive conception of the

scope of unsealing at this stage runs counter to the Protective Order's targeted procedure for confidentiality challenges.[2]

Additionally, the Plaintiffs "already have access to the documents covered by the protective order." *Pittston*, 368 F.3d at 406. "If a member of the public or the news media were to move to intervene in this matter or seek disclosure of sealed or redacted records, the Court would take appropriate action at that time." *Myles*, 2016 WL 3077399, at *3. No such intervention has occurred in the nearly seven years of this litigation nor the four months that this motion has been pending, and there is no reason to imagine great public interest where none is apparent.

Under the circumstances, the Plaintiffs had more than "a full opportunity to litigate the initial imposition of the seal," and never did so. *United States v. Morgan*, 962 F.2d 8, at *3 (4th Cir. 1992) (unpublished table decision). At this stage of the litigation, it is their burden to "show[] a change in circumstances sufficient to warrant a reconsideration of the seal." *Id.* at *3; *see Longman*, 186 F.R.D. at 333-34. In pointing only to the public's ever-present right of access, the Plaintiffs have failed to meet that burden. *Longman*, 186 F.R.D. at 333-34; *Myles*, 2016 WL 3077399, at *2-3.

Nevertheless, considering the vitality of the public's right of access, the court will consider limited unsealing on a document-by-document basis, focusing on instances where the balance of interests in sealing has significantly changed since the seal was imposed. Specifically, the public interest in access is naturally heightened for sections of a sealed document that the

---

[2] Despite the Protective Order's requirement that the party challenging confidentiality identify the disputed material with specificity and outline objections to the confidentiality designations, Protective Order ¶ 9(d), it appears that Smith & Nephew identified all of the disputed (and undisputed) material in response to the Plaintiffs' blanket contention that all documents submitted in support of dispositive motions should be unsealed more or less in their entirety.

court cited in its rulings. *See In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296, at \*4 (4th Cir. 1995) (unpublished table decision) ("[P]ublic access to documents that a court did not consider would not 'play a significant positive role in the functioning of the particular process in question.'" (quoting *Press-Enterprise Co.*, 478 U.S. at 8)); *cf. Jones v. Lowe's Cos., Inc.*, 402 F. Supp. 3d 266, 292 (W.D.N.C. 2019), *aff'd*, 845 F. App'x 205 (4th Cir. 2021) (reasoning that there is a decreased public interest in access to sections of a document on which the court did not rely in rendering a decision); *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, No. 13-cv-0031-DKC, 2013 WL 3465352, at \*11 (D. Md. July 9, 2013) (sealing sections of documents that were "not relevant"). Many of the documents at issue were unnecessarily filed under seal in their complete form (often by the Plaintiffs) and are therefore voluminous and contain extensive information not relevant to the proposition for which they were submitted. In reaching its decisions, the court considered most of these documents in limited part and cited the sections on which it relied. Therefore, the court concludes that reconsideration of the interests for and against sealing is appropriate only for the cited portions of the disputed documents.

## II. Applicable Standard

For a document to be subject to the public's right of access pursuant to either the common law or the First Amendment, it must be a "judicial record." *In re Application*, 707 F.3d at 290 (citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63-64 (4th Cir. 1989)). Judicial records are documents filed with the court that "play a role in the adjudicative process, or adjudicate substantive rights." *Id.* (citing *Rushford*, 846 F.2d at 252 and *In re Pol'y Mgmt.*, 67 F.3d 296); *see id.* at 291 ("The item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)).

All but three of the disputed documents were included as exhibits to motions for summary judgment or were exhibits at trial, and the other three documents, although submitted as exhibits to a motion regarding expert testimony, were cited by the court in memoranda deciding motions for summary judgment. *See* Mot. Ex. B; *Redick* Summ. J. Mem. at 2, 9-10, ECF 2715; *Mosca* Summ. J. Mem. at 2, 8-9, ECF 2905; *Sedgwick* Summ. J. Mem. at 2, ECF 2977. The court concludes that the disputed documents are "judicial records." *See In re Pol'y Mgmt.*, 67 F.3d 296, at *4 ("We agree with the Second Circuit that a document becomes a judicial document when a court uses it in determining litigants' substantive rights.").[3] Because the decisions resolved motions for summary judgment, the First Amendment right of access also applies to these documents and to exhibits at trial. *Rushford*, 846 F.2d at 252-53.

### III. Competing Interests and Alternatives to Sealing

Smith & Nephew asserts that the documents should generally remain confidential because they contain sensitive business information and trade secrets, but concedes that certain pages cited by the court should be unsealed when applying the First Amendment right of access. Mot. at 12. The Plaintiffs dispute the extent to which the documents contain information that should remain under seal, and contend that the documents should be redacted rather than sealed. Opp'n at 9.

Courts have generally recognized that "business information that might harm a litigant's competitive standing" is an exception to the presumption of public access. *Nixon*, 435 U.S. at 598; *Under Seal v. Under Seal*, 326 F.3d 479, 485-86 (4th Cir. 2003) (citing *Nixon*, 435 U.S. at 598). Under the First Amendment standard, courts in this district have normally required asserted

---

[3] Smith & Nephew argues that only the court-cited sections of the documents are judicial records. The court assumes without deciding that the documents are judicial records in their entirety because it has already limited its analysis to the cited sections based on a change in circumstances. *See supra* Section I.

"business information" to be a "trade secret" in order to demonstrate the requisite compelling interest in confidentiality. *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 690 (D. Md. 2012); *see Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 122-23 (D. Md. 2009). Of course, "trade secrets enjoy a 'broad definition,'" and include a "formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to gain an advantage over competitors . . ." *Minter*, 258 F.R.D. at 122 (quoting 3 Jack B. Weinstein, *Weinstein's Federal Evidence* § 508.04 (2d ed. 2009)) (alterations in original). The Plaintiffs do not argue that protection of trade secrets is an insufficient justification for sealing, and the court agrees that trade secrets should generally remain under seal notwithstanding the public's First Amendment right of access.[4] The questions that remain, then, are whether the cited portions of the disputed documents contain trade secrets, and whether those portions should therefore remain under seal.

Smith & Nephew sorts the documents into analytical categories based on their character and contents: A) governmental filings; B) foreign registry data analyses; C) internal audit summary; D) internal analyses; E) employee information; F) business strategies; and G) proprietary training materials.

### A. Governmental Filings

Smith & Nephew identifies seven documents that it submitted to government agencies or that discuss submissions to the government. Smith & Nephew briefly contends that the fact that information was submitted to the government should weigh in favor of maintaining its confidentiality. Mot. at 13 (citing *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724,

---

[4] Smith & Nephew raises several other justifications for maintaining seals on various types of documents. The court will analyze each of these with regard to the relevant documents, but finds them all undisputed or without merit.

732 (4th Cir. 2013)); Mot. Ex. H ¶ 18, ECF 5094-9. This justification focuses on the government's interest in "assur[ing]" the "persons having necessary information . . . that it will remain confidential" so that they will "cooperate with officials" when submitting information to the government. *Am. Mgmt. Servs.*, 703 F.3d at 732. The contention does not significantly supplement Smith & Nephew's primary argument because the court will generally maintain the confidentiality of trade secrets, which is the same type of confidential information that was at issue in *American Management Services*. 703 F.3d at 729 (applying a FOIA exemption for "trade secrets and commercial or financial information" to affirm withholding disputed documents); *see* Mot. Ex. H ¶¶ 11-13 (focusing on "trade secrets" and "significant competitive harm" of disclosure).

Smith & Nephew does not oppose unsealing the cited sections of several of these documents, including Smith & Nephew's BHR premarket approval application to the FDA (including the FDA's acknowledgement of receipt and eventual approval, Bates numbered SN_BHR_MDL-0000001 – SN_BHR_MDL-0000011), ECF 2427-9; *see* Mot. at 13-14, Smith & Nephew's BHR recall notice (including the document's cover email and "Part 806" submission, Bates numbered SN_BHR_MDL_0244001 – SN_BHR_MDL_0244008), ECF 2427-28; *see* Mot. at 14-15, page 89 of Timothy Band's deposition, ECF 3477-4, Mot. at 17, and pages 111-15, 142, 360, and 362 of Donna-Bea Tillman's deposition, ECF 2515-22, Mot. at 17-18.[5]

The court cited one page of ECF 2592-18 (Bates number SN_BHR_MDL_1764969) for the proposition that Smith & Nephew's surgical training for the BHR included lectures on "anticipated PMA approved indications, contraindications, warnings and precautions (as known at the time and reinforced after approval)." *Redick* Summ. J. Mem. at 29. Smith & Nephew

---

[5] Smith & Nephew does object to unsealing other cited pages of Donna-Bea Tillman's deposition, which the court analyzes below.

12

argues that this document contains specific details of its surgical training program which are proprietary and the release of which would be harmful to Smith & Nephew. Mot. at 15-16. After review, the court agrees that the details of Smith & Nephew's training program constitute trade secrets. *See* Mot. Ex. H ¶ 16. Only the language quoted by the court is relevant to its opinion and, because it is quoted from the document verbatim, redacting and unsealing the document would not provide any new information to the public. The document will therefore remain under seal.

The court cited one page of ECF 2757-8 (Bates number SN_BHR_MDL_2290901) to explain the amount of BHR survival data Smith & Nephew had. *Sedgwick* Summ. J. Mem. at 6. Smith & Nephew contends that this document in its entirety contains confidential information. Mot. at 16. Upon review, the content of this page, excluding tables 15 and 16, is relevant to the court's decision, does not contain trade secrets, and should be unsealed. Tables 15 and 16 were not considered and should be redacted.

The court cited four pages of ECF 2427-109 to explain that Smith & Nephew likely should have continued investigating ad hoc data produced by the Australian Orthopaedic Association National Joint Replacement Registry ("Australian Registry"). *Redick* Summ. J. Mem. at 18. Smith & Nephew argues that these pages should remain under seal because they "involve testimony about confidential interactions with FDA." Mot. at 17. After review of pages 109, 114, and 118-19, the court concludes that they do not contain trade secrets and should be unsealed.

Smith & Nephew opposes unsealing several pages of ECF 2515-22 (107-08, 176, and 178-79) which the court cited for the proposition that Smith & Nephew did not submit Australian Registry data in its annual reports to the FDA despite the possibility that it should have been reported pursuant to the relevant regulations. *Redick* Summ. J. Mem. at 10, 18 & n.6; *Mosca*

Summ. J. Mem. at 9. Smith & Nephew's objection to unsealing focuses primarily on the contention that these pages discuss the content of the Australian Registry data, which is subject to a confidentiality agreement between Smith & Nephew and the Australian Registry. Smith & Nephew's argument that the Australian Registry's restrictions on publication justify confidentiality is unconvincing. Although the parties are free to limit their own right to disclose information, private agreements do not bind the court. *Sky Angel*, 2013 WL 3465352, at *10 (citing *Bureau of Nat'l Affairs v. Chase*, No. 11-cv-1641-ELH, 2012 WL 3065352, at *3 (D. Md. July 25, 2012) and *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 729 (M.D.N.C. 2013)). Nor do such limitations necessarily overcome the public's right of access. *Id.* Moreover, after review, the court has determined that the disputed pages do not contain substantial information about the Australian Registry's data nor any trade secrets and therefore all should be unsealed.

### B.  Foreign Registry Data Analyses

Smith & Nephew identifies twenty-two documents containing data provided by the Australian Registry and argues that they should remain under seal because the data were provided to Smith & Nephew with restrictions on its public disclosure and because they contain trade secrets. Mot. Ex. I ¶¶ 8, 11-12, ECF 5094-10. As explained, the court is not bound by Smith & Nephew's obligations to a third party. *Sky Angel*, 2013 WL 3465352, at *10. Nevertheless, the fact that documents contain a third party's proprietary information weighs in favor of sealing. *Jones*, 409 F. Supp. 3d at 294 (citing *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 07-cv-275-D, 2011 WL 901958, at *2 (E.D.N.C. Mar. 15, 2011)); *see Pittston*, 368 F.3d at 406 (reasoning that the interest in confidentiality was heightened for documents produced by a

14

third party); *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 478 (6th Cir. 1983); *cf. In re Nat'l Broad. Co.*, 653 F.2d 609, 619-20 (D.C. Cir. 1981).

Documents ECF 2514-16 to -17 and ECF 2515-11 to -16 contain the data analyses provided by the Australian Registry. In addition to its confidentiality-agreement argument, Smith & Nephew contends that the elements of these data that are relevant to the claims at issue are already enumerated in the court's decision in *Redick*, and that irrelevant information in the reports should not be disclosed. Thus, Smith & Nephew opposes unsealing any of these documents. Mot. at 18-19. The court relied on the data in the Australian Registry reports to support its general conclusions that "Smith & Nephew learned its revision rates were much worse than the rates it touted in its marketing materials," *Redick* Summ. J. Mem. at 22, and that "the ad hoc reports and data Smith & Nephew received were not available to doctors," *id.* at 25-26. After review, the court concludes that the data included in its decision in *Redick*, *id.* at 7-8, are sufficient to apprise the public of the support for the claims at issue, and the additional data are irrelevant to the claims and were not considered. Redaction and unsealing of these documents would not alter the scope of publicly available information and would create unnecessary work for all parties. Therefore, the court will maintain these documents under seal.[6]

The court cited ECF 2757-13 for the general proposition that Smith & Nephew knew it could request analyses of specific data before 2009. *Sedgwick* Summ. J. Mem. at 7, 19. The court has reviewed the document and concludes that its specific contents, as opposed to its mere existence, are not relevant to the proposition and, the court's decision sufficiently describes the existence of the document. ECF 2757-13 will therefore remain under seal.

---

[6] One page within this document set, Bates number SN_BHR_MDL_0959820 in ECF 2515-12, was cited heavily throughout the dispositive briefing and during the *Redick* trial and does not contain any trade secrets. This page will therefore be unsealed.

The court cited ECF 3477-7 for the proposition that some Smith & Nephew employees were not surprised by the results of the Australian Registry's analyses. Early Implant Summ. J. Mem. at 7-8, ECF 4460. Smith & Nephew argues that this document, an email chain including reactions to the data, should remain sealed because it reflects the Australian Registry's analysis. Smith & Nephew's obligations to the Australian Registry do not bind the court. Moreover, the emails include almost no data at all, and instead speak about the analyses' results in general terms. *See* ECF 3477-7. The court will unseal this document.[7]

Smith & Nephew agrees to unsealing the pages of ECF 3477-4 that were cited by the court (93-95), and those pages will therefore be unsealed.

Smith & Nephew objects to the unsealing of eleven exhibits from the *Redick* trial because they contain Australian Registry data.[8] The court is not bound by Smith & Nephew's agreement with the Australian Registry, and Smith & Nephew offers no other basis for maintaining the confidentiality of these exhibits. However, where the data are not relevant to the claims at issue in *Redick*, the interest in maintaining the confidentiality of a third party's proprietary information may outweigh the public's interest in access, and those sections of the exhibits will remain under seal. *Jones*, 409 F. Supp. 3d at 294 (citing *Silicon Knights, Inc.* 2011 WL 901958, at *2). The public's interest controls with respect to data that are relevant. Smith & Nephew will have the opportunity to identify sections of these documents that are not relevant to the claims in *Redick* and confer with the Plaintiffs about applying redactions before the documents are unsealed.

---

[7] Unsealing of ECF 3477-7 is subject to redactions of the personal information of foreign employees subject to foreign privacy laws, which the Plaintiffs agree are appropriate. *See* Opp'n at 12 n.7.

[8] The exhibits are numbered: PX7; PX9; PX14; PX22; PX25; PX48; PX56; DX0287; DX3683; DX4308; DX9485.

### C.  Internal Audit Summary

Smith & Nephew argues that a document containing a summary of a third-party's audit of Smith & Nephew's safety processes should remain sealed because it is irrelevant and contains trade secrets. The Plaintiffs do not contest Smith & Nephew's position, and the court concurs that ECF 2842-10 need not be unsealed because the court expressly found that it was not relevant to the claims at issue. *Sedgwick* Mem. at 19 n.4; *see In re Pol'y Mgmt.*, 67 F.3d 296, at *1.

### D.  Internal Analyses

Smith & Nephew contends that documents describing its internal analyses of the BHR should remain under seal because they contain trade secrets and the names of employees protected by foreign data privacy laws. Smith & Nephew cites a declaration explaining that the analyses contain "both the particular analysis at a given point in time and more broadly the company's methods and practices used in these analyses, which are proprietary." Mot. Ex. J ¶ 11, ECF 5094-11. According to Smith & Nephew's declarant, disclosure of this information would "cause Smith & Nephew significant competitive harm if these internal analyses were made available publicly [because] they could be used by Smith & Nephew's competitors to gain an unfair competitive advantage." The Plaintiffs respond that the documents should be unsealed because they "provide helpful context and perspective," and agree to redact foreign employee names. Opp'n at 12-13 & n.7.

The court cited ECF 2515-17 for the proposition that "Smith & Nephew's own internal complaint data regarding the BHR was 'almost entirely revision surgeries' and trends within those complaints showed that revisions for females and smaller head sizes were 'prevalent.'" *Redick* Summ. J. Mem. at 8. These quotations appear on the first page of the document (Bates

number SN_BHR_MDL_0951239), which Smith & Nephew agrees to unseal.[9] The other pages are administrative emails not relevant to the proposition and will remain sealed.

The court cited one page (Bates number SN_BHR_MDL_0079841) of ECF 2757-11 for the proposition that its recalled devices had a seven-year revision rate of 17.2%. *Sedgwick* Summ. J. Mem. at 7. Smith & Nephew does not oppose unsealing this page, and the court concludes that only this page of the document will be unsealed.

Smith & Nephew and the Plaintiffs appear to agree that ECF 2757-12 can be unsealed subject to redactions of the personal information of foreign employees subject to foreign privacy laws, and it will be unsealed in redacted form.

Exhibit PX23 contains data calculated by Smith & Nephew and includes a description of the calculation method. Smith & Nephew contends that disclosure of these data and the proprietary method of calculation would be competitively harmful. Mot. Ex. J ¶¶ 11, 12(iii). After review, the court concludes that redaction of the internal data summary table and description of the method of calculation (the final paragraph on SN_BHR_0370212 and the immediately following table) is necessary because they constitute trade secrets the disclosure of which would be harmful to Smith & Nephew, but the document will otherwise be unsealed.[10]

### E.  Employee Information

Smith & Nephew asserts that one document, PX21, should remain confidential because it contains information about the employment status of a former Smith & Nephew employee and because that information "has no bearing on the issues in this litigation." Mot. at 23. The Plaintiffs oppose both positions. After review, the court concludes that Smith & Nephew's

---

[9] Unsealing of ECF 2515-17 is subject to redactions of the personal information of foreign employees subject to foreign privacy laws.

[10] Unsealing of PX23 is subject to redactions of the personal information of foreign employees subject to foreign privacy laws.

human resources confidentiality policies are not a sufficiently compelling interest to overcome the public right of access, and that the email is relevant to the litigation. *See Redick* New Trial Mem. at 11-12, ECF 3388. Thus, PX21 will be unsealed.

### F.  Business Strategies

Smith & Nephew argues that thirteen documents containing information regarding its confidential business strategies should remain under seal. Smith & Nephew relies on an employee's declaration to show that disclosure of this information would result in competitive harm. Mot. Ex. J ¶¶ 16-20. Specifically, the declarant explains that "[i]f a competitor had access to Smith & Nephew's marketing strategies and data and targets for the BHR . . . its competitors could adopt those strategies without the necessity of having invested the time, money, and other resources to develop their own strategies, or could more readily work to counter Smith & Nephew's marketing approach." *Id.* ¶ 19. The Plaintiffs respond that the strategy documents are no longer sensitive because they are "a decade old or older," but that they are willing to permit redactions of "sensitive sales data or financial information." Opp'n at 13.

The court cited ECF 2514-11 for the quotation that Smith & Nephew encouraged its sales team to "'be active and call on your surgeons to share the excellent results of BHR' by stressing that overall revision rates of the BHR were lower than its competitors." *Mosca* Summ. J. Mem. at 7. Smith & Nephew contends that the document as a whole contains "internal and proprietary marketing strategies" the disclosure of which would be harmful to Smith & Nephew notwithstanding their age. Mot. at 24; Mot. Ex. J ¶¶ 17-20(i). After review, the court concludes the document's three bulleted paragraphs are specific marketing strategies constituting trade secrets which could give competitors an unfair advantage if disclosed and should be redacted, but the remainder of the document will be unsealed.

The court cited three pages (Bates numbered SN_BHR_MDL_1792893, SN_BHR_MDL_0868533, and SN_BHR_MDL_0868543) of ECF 2514-15 and two pages (Bates numbered SN_BHR_MDL_1792893 and SN_BHR_MDL_0868533) of ECF 2515-9 for the propositions that Smith & Nephew had a "general awareness that peer-reviewed literature indicated that revision rates for the BHR were higher for females and patients with smaller head sizes than the overall revision rates for all patients" but used overall revision rates in its marketing.[11] *Mosca* Summ. J. Mem. at 7. After review, the court has determined that the cited pages contain some proprietary information not relevant to the proposition, but the relevant information in these documents does not include trade secrets. Therefore, those pages will be unsealed subject to redactions of irrelevant information.[12]

The court cited one page (Bates number SN_BHR_MDL_0215787) of ECF 2757-10 for the proposition that Smith & Nephew had "data showing that [the BHR's] revision rate was five percent at eight years compared with a similar, but heat-treated, device which had a sixteen percent revision rate at seven years." *Sedgwick* Summ. J. Mem. at 7. It is unclear whether Smith & Nephew opposes unsealing this page of the document, but, regardless, it does not contain specific proprietary information. Thus, this page will be unsealed in its entirety, but the remainder of the document will remain under seal.

The court cited sections of ECF 3615-6 and ECF 3477-6 for propositions relating to the possibility that Smith & Nephew knew of higher BHR revision rates in women before October 2009 (and that Smith & Nephew believed using an "as cast" manufacturing process reduced

---

[11] ECF 2514-15 and ECF 2515-9 are the same document, submitted as support for different motions. There is some confusion about the cited pages due to prior reliance on ECF pagination. The court confirms that the listed Bates numbers are the pages cited for the propositions in *Mosca* and *Redick*.

[12] In particular, the court notes that the paragraph beginning "Are there lots of BHR issues . . ." on SN_BHR_MDL_1792893 was regularly cited during the litigation and will be unsealed.

revision rates in the BHR).[13] *Hand* Summ. J. Mem. at 14, 19, ECF 3642; Early Implant Summ. J. Mem. at 7-8. In *Hand*, the court cited pages 8-29, consisting of the entirety of a Smith & Nephew PowerPoint presentation. *Hand* Summ. J. Mem. at 14, 19. The court concludes that, of this range, pages SN_BHR_MDL_0750131, SN_BHR_MDL_0750145, and SN_BHR_MDL_0750147, are relevant to the propositions and are therefore subject to unsealing. These pages do not contain proprietary information and will be unsealed. In the Early Implant decision, the court cited pages SN_BHR_MDL_0750145,       SN_BHR_MDL_1980717,       SN_BHR_MDL_0619741, SN_BHR_MDL_0619762, and SN_BHR_MDL_0619785. Early Implant Summ. J. Mem. at 7-8. After review, the court concludes that none of the cited pages contains proprietary information, and all will therefore be unsealed. Additionally, these documents also include SN_BHR_MDL_1792893, which the court has determined should be partially unsealed subject to agreed redactions of irrelevant information. The rest of the document will remain under seal.

After review, the court concludes that Exhibits PX4, PX5, PX11, PX12, PX77, PX2006_006, and PX2007_001, do contain information related to Smith & Nephew's strategies for developing and marketing the BHR, which provide potentially harmful insights into Smith & Nephew's proprietary approach to marketing its products. *See* Mot. Ex. J ¶ 17. Specifically, pages SN_BHR_MDL_2933882 – SN_BHR_MDL_2933892 of PX4; sections of PX5 (which should be redacted in accordance with the duplicates of SN_BHR_1792893); sections of Ronan Treacy's email in PX11 (but not forwarding email); sections of PX12 (both email chain and attached script draft); pages SN_BHR_MDL_0427513 (not including bullet referring to the BHR as a "cash cow") and SN_BHR_MDL_0427531 of PX77; sections of PX2006_006; and sections

---

[13] Smith & Nephew cites to ECF 3615-6 as the same document as ECF 3477-6, "a 127-page exhibit consisting of multiple different documents." Mot. at 25-26. Review of the docket confirms that the 127-page exhibit matching ECF 3477-6 is in fact ECF 3615-5.

of PX2007_001 describing weaknesses of competitor devices and specifically describing Smith & Nephew sales strategies (as opposed to descriptions of data or general comparisons) contain trade secrets and should be redacted as necessary. PX13 does not contain proprietary information and should be unsealed (subject to redactions of foreign personnel information). Smith & Nephew should identify trade secrets within the identified ranges and foreign personnel information and confer with the Plaintiffs about applying appropriate redactions. The redacted documents will then be unsealed because they were admitted as evidence at trial and the information was relevant to potential claims.

### G.  Proprietary Training Materials

Smith & Nephew identifies three documents containing or discussing medical training prepared by third-party surgeons for Smith & Nephew. It contends that these documents should remain under seal because they contain proprietary third-party research and work product which Smith & Nephew cannot independently make public, and because they are not particularly relevant to the claims at issue. The Plaintiffs do not offer opposition to Smith & Nephew's arguments. As previously explained, the court is not bound by Smith & Nephew's privacy obligations to third parties. *Sky Angel*, 2013 WL 3465352, at *10.

The court cited one page (SN_BHR_MDL_3309729) of ECF 2591-37 for the proposition that evidence of data regarding the failure of hip implant devices was generally available to doctors who implanted the BHR. *Mosca* Summ. J. Mem. at 16. That page does not contain trade secrets or otherwise proprietary information and will be unsealed.

The court cited ECF 2514-3 extensively in its summary judgment ruling in *Mosca*. *See generally Mosca* Summ. J. Mem. Smith & Nephew notes that only three of the pages cited, 162, 164, and 165, were designated confidential under the Protective Order, *see* Mot. at 29; Mot. Ex.

K at 5-7, ECF 5094-12, and agrees that those pages can be unsealed. The court will unseal these three pages, and, for the sake of consistency, the other cited pages of ECF 2514-3 that Smith & Nephew did not designate confidential. Uncited pages will remain under seal.

Smith & Nephew argues that DX7426 should remain sealed because publication would harm a third party's proprietary interests, undermine Smith & Nephew's ability to attract surgeons to present at its events, and would not advance the public's understanding of the litigation.  Mot. at 29. After review, the court concludes that DX7426 is not particularly relevant to the specific claims at issue in this litigation and that the interest in protecting the proprietary information of third parties overcomes the public's interest in access to this document. *See Jones*, 409 F. Supp. 3d at 294 (citing *Silicon Knights, Inc.*, 2011 WL 901958, at *2). It will therefore remain under seal.

## IV. Process of Redaction

The parties should collaborate to review the documents to be unsealed and apply redactions consistent with the limits outlined by the court. All effort should be made to reach agreement as to the redactions, and the court emphasizes that although the definition of trade secrets is broad, borderline cases should generally be construed in favor of the public's right to access. If the parties cannot concur on specific redactions, those disputes may be submitted to the court for final resolution before the redacted documents are filed on the public record.

## CONCLUSION

For the reasons stated, the court will grant Smith & Nephew's motion in large part and deny it in part. A separate order follows.

___3/11/2024___                                    ___/s/___
Date                                               Catherine C. Blake
                                                   United States District Judge